FREDERICK H. APPLETON, Assignee,

*vs.*

WILLIAM W. TURNBULL.

Penobscot.    Opinion December 8, 1891.

*Corporation. Stockholder. Unpaid Stock. Set off. Sales by pledgee. R. S., c. 46, § § 47, 48. Stat. 1821, c. 210; 1836, 200, § 3; 1851, c. 210; 1855, c. 169, § 19; 1871, c. 205.*

By virtue of R. S., c. 46, § 48, debts which a stockholder has against an insolvent corporation may be set off against a debt which he owes for unpaid stock, in a suit against him by an assignee of the insolvent corporation as well as when suit is brought by a judgment creditor.

The capital stock of a corporation is a trust fund for the payment of its debts.

Unpaid stock is as much a part of the assets of the corporation as the money that has been paid in upon it.

It is a general rule that agents to sell cannot be purchasers, and that trustees of every description, who are invested with power to sell, can never directly or indirectly become the purchasers of trust property.

A pledgor may lawfully stipulate that the pledgee may purchase, and this may be done at the time of making the pledge.

The pledgor may afterwards authorize the pledgee to purchase, or he may ratify such purchase after it has been made.

Such purchases are voidable and presumably void, though not conclusively so.

The burden of showing authority for the pledgee to become the purchaser is cast upon the purchaser in such case.

AGREED STATEMENT.

*Appleton and Chaplin*, for plaintiff.

*Wilson and Woodard*, for defendant.

FOSTER, J. The Lincoln Pulp and Paper Company, a corporation existing under the laws of this State, was adjudged insolvent on petition of its creditors, and the plaintiff as assignee brings this suit to recover the sum of six thousand and twenty dollars, being the balance of forty per cent of the par value of three hundred and one shares of the company's stock issued to the defendant, and for which he paid only sixty per cent of its par value under an allotment of stock made by the directors of the corporation, November 4, 1884.

No contention is made in reference to the validity of the plaintiff's claim against the defendant, inasmuch as this court has recently decided in *McAvity* v. *Lincoln Pulp and Paper Co.* 82 Maine, 511, upon a state of facts similar in their bearing to those presented here, that the acceptance and payment of sixty per cent of the new stock allotted to the stockholders must be considered "an agreement for" those shares; and consequently those who accepted and paid the per cent named would be chargeable for the balance unpaid as having "subscribed for or agreed to take stock in said corporation" within the meaning of the statute and in accordance with the decision of *Libbey* v. *Tobey*, 82 Maine, 397, 404.

The defendant, then, being primarily liable for $6020 unpaid on his shares allotted to him, at fifty dollars a share par value, contends that he has a full defense to the plaintiff's claim by virtue of R. S., c. 46, § 48, which provides that "a defendant in such suit . . . may prove that he has *bona fide* claims in contract or tort, several, or joint with other persons, against said corporation, absolute or contingent, or which could be availed of by set-off in court or on execution, for the whole or

any part of the amounts for which he would be liable under this chapter," etc.

Assuming that the defendant has debts against the corporation equal to or greater in amount than the claim for unpaid stock which the plaintiff seeks to recover in this action, we are brought to the consideration of this important question : Can debts which a stockholder has against an insolvent corporation be set off against a debt which he owes for unpaid stock, in a suit against him by an assignee of the insolvent corporation, who represents all the creditors, and who in accordance with his duty is marshaling the assets in order to close up the affairs of the corporation and make a pro rata distribution among all the creditors ?

To answer this correctly, and in its application to the present case, requires an understanding of the stockholders' rights and liabilities, both at common law and under the statute.

It is too firmly established at the present day to be questioned that the capital stock of a corporation is a trust fund for the payment of its debts. It is a substitute for the personal liability of the individual members of private copartnerships, and those who deal with the corporation have a right to rely upon its capital stock for their security. Unpaid stock is as much a part of the assets of the corporation as the money that has been paid in upon it. Creditors have the same right to insist upon its payment as upon the payment of any other debt due the corporation, so far as it is necessary to the satisfaction of debts due from the corporation. During the existence of the life of the corporation it is a trust to be managed for the benefit of the stockholders ; but in the event of its dissolution, or insolvency, it becomes a trust fund for the benefit of its creditors. If, in such case, the assets are not sufficient to pay all its debts in full, each creditor is equitably entitled to receive a ratable share of the assets which remain. Hence it follows that where proceedings have been instituted to obtain a general distribution of the assets of an insolvent corporation among the creditors, the shareholders cannot, at common law, when sued for the amount due upon their unpaid stock, set off debts due to them

from the corporation. In such case the doctrine laid down by the courts for thirty years is, that they must pay up their shares in full, and are entitled only to a ratable distribution of all the company's assets, and are to receive dividends upon their claims against the corporation in common with other creditors. Morawetz on Priv. Corp. § 861; Cook on Stock and Stockholders, § 193. The rule was settled by the Supreme Court of the United States in *Sawyer* v. *Hoag*, 17 Wall. 610 (1873), where the Court say: "The debt which the appellant owed for his stock was a trust fund devoted to the payment of all the creditors of the company. As soon as the company became insolvent, and this fact became known to the appellant, the right of set-off for an ordinary debt to its full amount ceased. It became a fund belonging equally, in equity, to all the creditors, and could not be appropriated by the debtor to the exclusive payment of his own claim." *Scovill* v. *Thayer*, 105 U. S. 143, 152; *Sanger* v. *Upton*, 91 U. S. 56; *Stockton* v. *Mechanics*, &c. *Bank*, 32 N. J. Eq. 163, 167; *Williams* v. *Traphagen*, 38 N. J. Eq. 57; *Wheeler* v. *Millar*, 90 N. Y. 353.

The same rule prevails in England, as may be seen in the leading decision of *Grissell's Case*, L. R., 1 Ch. 528 (1866).

If the defendant's rights as well as his duties were to be determined by the common law alone, it is evident that the defense interposed in this case could not prevail.

We must ascertain, then, whether the statute has altered the common law and enlarged the defendant's rights.

It is undoubtedly the intention of the statute, as, manifested by sections 47 and 48, R. S., c. 46, to provide a remedy against the delinquent stockholder by two different parties toward whom he stands in entirely different relations: (1,) By an individual creditor of the corporation who has an unsatisfied judgment against the corporation in his own name and for his own personal benefit; (2,) By a trustee, receiver or other person appointed to close up the affairs of an insolvent corporation.

The contention of the plaintiff is that so much of section 48 as is quoted above applies only to the first class,—to a suit brought by an individual creditor, and not to a suit brought by a person of the second class as in the present case.

Section 47 provides that "any person having such judgment, or any such trustees, receivers or other persons appointed to close up the affairs of an insolvent corporation, may, within two years after their right of action herein given accrues, commence an action on the case or bill in equity, without demand or other previous formalities, against any persons (if a bill in equity, jointly or severally, otherwise severally) who have subscribed for or agreed to take stock in said corporation and have not paid for the same," &c. And by section 48, "a defendant in such suit may prove . . . that he has *bona fide* claims in contract or tort, several, or joint with other persons, against said corporation, absolute or contingent, or which could be availed of by set-off in court or on execution, for the whole or any part of the amounts for which he would be liable under this chapter," &c., and proof of such matters is declared to be a full or partial defense for such defendant.

What is meant by "such suit?" "Suit is applied to proceedings in chancery as well as in law, and is, therefore, more general than action, which is almost exclusively applied to matters of law." Bouvier, Suit. "Suit is a generic term, and denotes any legal proceeding of a civil kind brought by one person against another." Co. Litt. 291 a. Rapalje and Lawrence Law Dic. Suit. "The term is certainly a very comprehensive one, and is understood to apply to any proceeding in a court of justice, by which an individual pursues that remedy in a court of justice, which the law affords him." *Weston* v. *The City Council of Charleston*, 2 Pet. 449, 464. Chief Justice Marshall, in *Cohens* v. *Virginia*, 6 Wheat. 264, 407, defines the term in the following language : "We understand it to be the prosecution, or pursuit of some claim, demand, or request. In law language, it is the prosecution of some demand in a court of justice."

In the construction of this statute, then, the term "such suit" undoubtedly must be held to apply to any action or bill in equity brought by a person having a judgment against a corporation, or by any trustee, receiver, or other person appointed to close up the affairs of an insolvent corporation. To hold that

it applies only to a suit brought by a person having a judgment against a corporation, and that it has no application where suit is brought by trustees, receivers, or other persons appointed to close up the affairs of an insolvent corporation, would violate the plain provisions of a statute whose terms are so free from ambiguity or uncertainty as to require no passing comment in reference to the general rules applicable to their interpretation.

The statute in question was enacted in 1871, c. 205, entitled, "An act fixing the liability of stockholders in corporations," and thereby important changes were made in the laws then existing in relation to the liability of stockholders. *Libbey* v. *Tobey*, 82 Maine, 397, 405. The language of the act is susceptible of no uncertainty as to its meaning. "It was intended to have effect according to its terms," says APPLETON, C. J., in *Poor* v. *Willoughby*, 64 Maine, 379, 383. And while the act seems to have been additional to the general statutes upon the subject, its manifest intention was to modify the liability of stockholders in the future, not only in relation to suits brought against stockholders by those having unsatisfied judgments against corporations, but also by trustees, receivers and other persons appointed to close up the affairs of insolvent corporations. It was in the general current of modern legislation which has been setting in the same direction for seventy years. An examination of the numerous enactments passed since this State became separated from Massachusetts shows a general tendency of modifying the more rigorous statute liability of stockholders which existed at an earlier date, and of basing such liability more upon the principles of equity.

Thus by the earliest statute (1821, c. 60, § 31) a creditor of the corporation might seize the body or estate of any member when no sufficient corporate property was to be found.

At a later day (1836, c. 200, § 3) the stockholder became liable only to the amount of his stock,—notwithstanding it was held even then that no protection was afforded the stockholder who had paid to the corporation the whole amount for which the statute made him liable. *Fowler* v. *Robinson*, 31 Maine, 189.

Afterwards however (1851, c. 210), the stockholder who had

paid and satisfied any debt of the corporation was allowed exemption from liability equal to the amount thus paid.

But more in accordance with the spirit of the present statute, (and which has become incorporated in all subsequent revisions) was that (1855, c. 169, § 19) which allowed the stockholder to prove not only the payment of any debt of the corporation in reduction of his liability, but also "any other legal cause why judgment should not be rendered against him."

The statute we are considering allows a defendant to prove that he has *bona fide* claims in contract or tort, several, or joint with other persons, against the corporation, absolute or contingent, or which could be availed of by set-off in court or on execution, for the whole or any part of the amounts for which he would be liable under this chapter. The language "for the whole or any part of the amounts for which he would be liable under this chapter" is strongly indicative of the intention of the legislature not to limit the defense to suits brought by one class of plaintiffs only. It is not for the amounts for which he would be liable under this chapter to a plaintiff having an unsatisfied judgment against the corporation only, but for the whole or any part of the amounts for which he would be liable under this chapter, including all classes of plaintiffs to whom any liability on his part is created by these statutory provisions.

Moreover, it is to be noticed that by these provisions a defendant may prove not only claims which could be availed of by set-off in any court, or on execution—and in the latter case the equitable right of set-off is very broad, *Pierce* v. *Bent*, 69 Maine, 381—but also other claims which could not be set off under the ordinary rules of law. Hence we must look to these provisions of statute in order to ascertain a defendant's right to offer in defense to such a suit as this proof of claims clearly not within the ordinary rules of law applicable to set-off, such proof being made by statute a defence to the suit, either full or partial, as the evidence may warrant.

Has the defendant made such proof as entitles him to a full defense to this action? We think he has.

At the date of this suit he had *bona fide* claims in contract

against the corporation to the amount of $8,250, exclusive of interest, as follows: One note dated July 12, 1884, for $5,350; one dated August 21, 1886, for $1,400, and another dated November 15, 1886, for $750, and also a claim of $750 for money paid on account of the corporation as guarantor. The two last mentioned notes and the amount paid as guarantor were proved in the proceedings in insolvency against the corporation.

At the time when the debt originated for which the note of $5,350 was given, the corporation entered into a written agreement with the defendant, acknowledging itself indebted to him for that amount, and agreeing to pay interest thereon, at the rate of seven per cent until the date of payment in case the note was not paid at a specified time. As collateral security for the payment of that note, the corporation delivered to the defendant thirteen first mortgage bonds of the corporation of five hundred dollars each; and by the written agreement it stipulated that in case default should be made in the payment of the note or any part thereof, at the time specified, then it should be lawful for the defendant without notice to the corporation to sell the said bonds delivered to him as collateral security at public auction or private sale as he might think best, and for such price or sums as he could reasonably obtain therefor, and to apply the proceeds, after paying the expenses of sale, to the payment or reduction of the $5,350. Long after the expiration of the time set for the payment of the note, the defendant, after giving public notice, had the bonds sold at public auction, and no one else appearing to buy the same had them bought in for himself for the sum of $799.31.

Should this amount be allowed in reduction of the $5,350 and interest thereon? We think not. The bonds were received by the defendant as a pledge, or collateral security, and notwithstanding there was a power of sale contained in the instrument, the attempted sale and purchase in this case cannot be upheld. Without such power of sale the defendant could not at the same time act in the double capacity of seller and purchaser of the property thus entrusted to him as security merely. He stood in a fiduciary relation in reference to the property entrusted to

him. It is a salutary and sound principle that agents to sell cannot be purchasers; and it is a general rule that trustees of every description, who are invested with power to sell, can never directly or indirectly become the purchasers of the trust property. *Dyer* v. *Shurtleff*, 112 Mass. 165, 167; *Arnold* v. *Brown*, 24 Pick. 89, 96; *Remick* v. *Butterfield*, 31 N. H. 70; *Coles* v. *Trecothick*, 9 Vesey, 234, 247; *Ex parte James;* 8 Vesey, 337, 346; *Carter* v. *Palmer*, 8 Cl. & Fin. 657, 706; *Church* v. *Mar. Ins. Co.* 1 Mason, 341; *Barker* v. *Same*, 2 Mason, 369. The pledgee cannot himself purchase the pledge at the sale. *Stokes* v. *Frazier*, 72 Ill. 428; *Bank* v. *Dubuque, etc., R. Co.* 8 Iowa, 277; *Bryson* v. *Rayner*, 25 Md. 424; *Marsh* v. *Whitmore*, 21 Wall. 178, 183; *Wardell* v. *Railroad Co.* 103 U. S. 651, 658.

The case of *Bank* v. *Minot*, 4 Met. 325, carries the doctrine to the extreme limit, and further, perhaps, than justice may require in protecting the rights of the pledgor under an express power of sale. There, a bank made a loan and took a pledge of the borrower's shares in its stock, as collateral security, with a power to sell either at public or private sale, if payment should not be made according to the terms of the loan. After the borrower's decease, the bank sold the shares at auction, notice having been given, for non-payment of the loan, and became the purchaser at the sale, giving credit for the amount received, and claimed the balance of the borrower's administrator. It was held that nothing passed to the bank by this form of sale. The court say: "The plaintiffs had full authority to sell the bank shares which were pledged to them, and their sale to a third person would have passed the property. But they could not be the purchasers. Nothing, therefore, passed by the form of sale at auction, in which they purchased in the shares; and they still held the same under their original title, as collateral security for their debt."

The doctrine enunciated in this case seems too rigorous, and we think it will be found to be modified wherever circumstances are shown indicating acquiescence, ratification, or approval on the part of the pledgor. *Marsh* v. *Whitmore*, 21 Wall. 178.

The pledgor may lawfully stipulate that the pledgee may purchase; and this stipulation may be made at the time of the pledge. The pledgor may afterward authorize the pledgee to purchase, or he may ratify such purchase after it has been made. Such ratification may even be inferred from circumstances. But such purchases are certainly voidable,— and presumably void, though not conclusively so. The burden of showing authority for the pledgee to become the purchaser, or ratification, is cast upon the purchaser in such case. *Burnham* v. *Heselton*, 82 Maine, 495, 500, illustrates this principle.

In the present case there was no authority for the pledgee to become the purchaser of the bonds. Neither was there ratification or approval on the part of the pledgor. Consequently the sale and purchase must be held to be void.

No computation is, of course, necessary to show that the remaining claims of the defendant in connection with the claim before mentioned, amount to very much more than the plaintiff's claim, and consequently entitle the defendant to a full defense in this action.

Nor can the fact that these latter claims have merely been proved in the insolvency proceedings,— nothing ever having been received by way of dividends, or otherwise, on the same, — operate to debar the defendant from submitting them in proof in this action as "*bona fide* claims in contract" held by him against the corporation. The right to prove these claims in defense is given expressly by the statute provisions hereinbefore considered. There is no provision of statute by which he can be held to have waived his right to such proof. To insert such a condition where none exists, on the part of the court, would be judicial legislation.

*Judgment for defendant.*

PETERS, C. J., WALTON, VIRGIN, LIBBEY and EMERY, JJ., concurred.