ANNA M. THOMAS *v.* FLORA M. GRAVES.

Special Term at Rutland, November, 1914.

Present: POWERS, C. J., MUNSON, WATSON, HASELTON, AND TAYLOR, JJ.

Opinion filed October 11, 1915.

*Pledges—Delivery of Possession—Constructive Delivery—Simultaneous Delivery—Forfeiture of Lien by Acts of Pledgor—Sale of Pledge to Pledgee—Enforcement of Pledge—Notice of Sale—Presumptions on Review—Chattel Mortgage—Bill of Sale as Mortgage—Consideration—Prior Debt.*

Where defendant, owing plaintiff a debt that was secured by two mortgages of real estate, gave plaintiff as further security a bill of sale of personalty then in a house on the mortgaged premises, and subsequently gave plaintiff the key of that house, there was a completed delivery of the personalty as a pledge, for the delivery of the key was a constructive delivery of the personalty.

After the possession of a thing pledged is delivered to the pledgee by the pledgor, the pledgee's lien cannot be forfeited by any wrongful act of the pledgor, such as retaking possession of the pledge without the knowledge or consent of the pledgee.

While it is a general rule that a pledgee cannot purchase the pledge, on a sale thereof to realize on the security, yet where the pledgor agreed that the pledgee might sell the goods pledged at prices fixed by the pledgor, and the pledgee bought some of those goods at prices equal to or greater than those so fixed, and duly reported such sales to the pledgor, they were not void, but only voidable by the pledgor, and where the record does not expressly show that the pledgor assented to such sales, but from the facts found it may fairly be inferred that she did, it will be presumed on review, in support of the decree below, that the court there drew that inference.

Although there is no specific prayer by the pledgee for confirmation of the sales to herself of a part of the goods pledged, under her prayer for general relief she may have any relief to which her case shows she is entitled, including such confirmation.

An existing old debt is a sufficient consideration for a pledge of personalty by the debtor to the creditor as security therefor.

The fact that a creditor owned five mortgages on the debtor's real estate does not preclude the creditor from taking further security from the debtor for the same debt by way of pledge.

An agreement by a pledgor that the pledged property may be sold at private sale is a waiver of notice of such sale.

It is not essential to the validity of a pledge that all of the pledged property be delivered at the same time, nor when the agreement is made, and as to any of the pledged property not then delivered the pledge takes effect when such property is subsequently delivered pursuant to the contract.

One of the remedies of a pledgee is by bill in chancery in the nature of a foreclosure, praying for an accounting and a judicial sale of the pledge.

APPEAL IN CHANCERY.   Heard on the pleadings and finding of facts by the chancellor at the December Term, 1913, Bennington County, *Slack,* Chancellor.

The following material facts were found by the chancellor. On December 31, 1912, the defendant was indebted to the oratrix in the sum of approximately $6,325, evidenced by two promissory notes, one for $6,000, dated April 1, 1911, and payable one year after date, and one for $400, dated August 1, 1911, and payable three months after date, both of which notes were unsecured.   Just prior to December 31, 1912, the oratrix placed these notes in the hands of Edward L. Bates, an attorney at law at Bennington, to look after and collect or secure.   On the day last named, Bates called the matter to the attention of the defendant, resulting in her giving to the oratrix a mortgage of certain real estate situate in Old Bennington, so-called.   This mortgage was subject to four prior mortgages given by defendant to various persons, all of which prior mortgages then were and still are valid liens on said real estate.   All these mortgages are now owned by the oratrix, except one, and she is negotiating for the purchase of that one.   On January 22, 1913, the defendant executed to the oratrix a bill of sale of the personal property described in oratrix's exhibit 1.   At the same time and as part of the same agreement, it was arranged that defendant should turn the possession of the property over to the oratrix, but that defendant should have the right to sell and dispose of such property as she might be able to find customers for from time to time, provided she turned the proceeds of such sales over to the oratrix to

be applied on said indebtedness, and the oratrix was to have the right to sell such part of said property as she was able to, providing she did not sell for less than the price fixed upon the several articles by the defendant, and that she apply the proceeds from the property sold by her on said notes.

Most of said property was then in the house on the premises at Old Bennington, covered by said real estate mortgages, the rest being at the Grant farm, so-called, where defendant then resided. It was a part of the same agreement that the property on the Grant farm should remain there while the defendant occupied the building, and when she ceased to do so it should be moved into the house at Old Bennington, and that all the property should be kept at the latter place until sold or the indebtedness was satisfied. At some time while the defendant still occupied the Grant farm, the date not appearing, Bates moved some of the rugs that were there to the house at Old Bennington.

After the conclusion of the foregoing agreement, the defendant executed exhibit 1 and delivered it to Mr. Bates. She then delivered possession of the house at Old Bennington and the property therein to the oratrix by delivering to her the key to the house. Bates, acting for the oratrix, began selling such of said personal property as he was able to find customers for, making the first sale on February 4, 1913, and continued so to do, as he found opportunity, until the defendant, without the knowledge or consent of the oratrix or her attorney, took possession of the house in which said property was stored about the 18th or 20th of July following. Bates received for the property so sold by him the sum of $1,451.30, all of which he indorsed on the said note for $6,000, as sales were made. The defendant fixed the prices on the various articles sold by him, and none of said property was sold for less than the price fixed by her; some was sold for more. Bates reported such sales, or most of them, to the defendant as soon as they were made, informing her of the particular article sold and the price received.

After the defendant took possession of the house in which said property was being kept, as before stated, she refused to give up possession of the house, or to permit the oratrix to have anything further to do with said personal property; whereupon this suit was brought. Shortly before the suit was commenced, Bates, acting for the oratrix at the house in Old Bennington, where the property pledged was kept and where defendant

then was, demanded of her the amount (stating the same) then due on the oratrix's said two notes, offering on payment to surrender them to her; but she did not pay them.

At the time of bringing this suit, a temporary injunction was issued against defendant, restraining her from selling, mortgaging, or otherwise incumbering any of the personal property mentioned and in the house at Old Bennington; from hindering or preventing the oratrix from entering the house while said personal property remained therein, and from interfering with her possession and control of the same; from taking possession of or exercising any control over said personal property while it remained in said house; and from hindering or preventing the oratrix from removing the same or any part thereof from said house.

This injunction was issued on July 23, 1913. On the 30th day of the same month, a hearing was had before a chancellor on defendant's motion to dissolve the injunction. At this hearing in view of the claims of the parties, at the chancellor's suggestion and neither party objecting, Collins M. Graves was appointed receiver, and the order of appointment authorized him to take possession of said personal property and sell the same or any part thereof at the highest price obtainable, at public auction or private sale, as might to him seem most advantageous. The receiver sold the property which came into his hands for $2,414.15, as appears by his report filed November 13, 1913. His charges allowed, including a rebate of $20, for property included in the sale but not delivered because not found, were $158.88, leaving a balance in his hands of $2,255.27.

Bates sold to the oratrix certain articles of property, for which he received in the aggregate $285.10. None of these articles was sold for less than the price fixed by the defendant, and the sales were made to the oratrix because she would pay more for the property than any other customer he was able to find.

There was due the oratrix, as of February 11, 1914, on her said two notes, after applying thereon the proceeds of all sales of property by the oratrix or her agent Mr. Bates, the sum of $5,222.60.

By the decree the sales made by the oratrix and her agent Mr. Bates, also the sales made by the receiver, were ratified and confirmed; the receiver was ordered to pay to the clerk of the

court, the aforesaid sum found as a balance in his hands, and upon so doing it should constitute a full accounting by and discharge of the receiver; that the clerk of court pay to the oratrix, upon final determination of the cause, the sum of $2,255.27, together with all interest that may accrue to the time of said payment, to be applied upon and in part payment of her said two notes; and for oratrix to recover her costs. Defendant appealed.

*Batchelder & Bates* for the oratrix.

*Marvelle C. Webber* and *E. H. Holden* for the defendant.

WATSON, J. The bill of sale from the defendant to the oratrix of the personal property enumerated in exhibit 1, accompanied by the delivery of the possession of such property, as security for the payment of the latter's two notes against the former, constituted a pledge, the delivery by the pledgor to the pledgee, of the key to the house containing the property pledged, being in law a constructive delivery of the possession of the property itself. Jones on Pledges, §37; *Chappel* v. *Marvin*, 2 Aik. 79, 16 Am. Dec. 684.

The pledgee being so in possession of the pledge, she could not be deprived of such possession by the pledgor's taking possession of the house where the property was stored, without the knowledge or consent of the pledgee or her agent. This possession of the pledge by the wrongful act of the pledgor, without the assent of the pledgee, did not create a forfeiture of the lien. Jones on Pledges, §41; *Walcott* v. *Keith*, 22 N. H. 196; *Way* v. *Davidson*, 12 Gray. 465, 74 Am. Dec. 604; *Thatcher* v. *Moore*, 134 Mass. 156; *American Pig Iron, etc. Co.* v. *German*, 126 Ala. 194, 28 So. 603, 85 Am. St. Rep. 21.

It is urged that the court erred in undertaking to ratify and confirm the sales made to the pledgee by her agent Mr. Bates. There is no doubt about the general proposition that a pledgee can not become the purchaser of the pledge; but in the instant case the record shows that by agreement of the parties the pledgee was to have ''the right to sell such part of the property as she was able to, providing she did not sell for less than the price to be fixed upon the several articles by the'' pledgor; that before the appointment of the receiver the oratrix's agent disposed of part of the property at private sale, receiving therefor

the aggregate sum of $1,451.30, none of the articles being sold for less than the price fixed by the pledgor, and some were sold for more; that of the articles so sold by said agent, the pledgee was the purchaser to the aggregate sum of $285.10, which sales were made to her because she would pay more for the property than any other customer the agent was able to find; that the agent reported the sales made by him, or most of them, to the pledgor as soon as they were made, informing her of the particular article sold and the price received. The record does not show that the pledgor ever objected to any of the sales so made; nor does it show an express finding of her assent to the sales made to the pledgee. These last mentioned sales were not void, but they were voidable at the option of the pledgor. From the facts found it may fairly be inferred that the latter afterwards ratified the sales made by the said agent, including those to the pledgee, (Jones on Pledges, §638; *Bryan* v. *Baldwin*, 52 N. Y. 232; *Appleton* v. *Turnbull*, 84 Me. 72, 24 Atl. 592; *Lord* v. *Hartford*, 175 Mass. 320, 56 N. E. 609,) and in affirmance of the decree it is presumed that the court below drew such inference. It is said, however, that no prayer for such relief is contained in the bill. True it is that there is no such specific prayer; but there is a prayer for general relief, and under this the oratrix may have such relief as her case entitles her to. The allegations in the bill involve all the sales made in connection with the enforcement of the pledge, and we think they are sufficiently broad to cover this phase of the case as shown by the facts found.

It is said that there was no consideration for the giving of the bill of sale. But this is not so. The preexisting debt due from the defendant to the oratrix was a good and sufficient consideration for the giving of security, by way of pledge, for the payment of the same. Jones on Pledges, §469; *Atkinson* v. *Brooks*, 26 Vt. 569, 62 Am. Dec. 592; *Austin* v. *Curtis*, 31 Vt. 64; *Noyes* v. *Landon*, 59 Vt. 569, 10 Atl. 342. Nor did the fact that the oratrix held a fifth mortgage on real estate owned by defendant, conditioned for the payment of the same indebtedness, make any difference in this respect. Such a mortgage would hardly be considered first-class security; and if it were, it would be no legal obstacle preventing her getting further security by way of the pledge in question. *Burpee* v. *Parker*, 24 Vt. 567.

It is further said that defendant was entitled to notice of sale, so that she might exercise the right to redeem. Ordinarily

this would be so. But the decree shows that the court below construed the agreement found as giving to the pledgee the power to dispose of the property by private sale without notice to the pledgor. It appears from the record that the first talk between Bates and the defendant was about her giving a chattel mortgage on the same property, but she finally objected to this, stating as a reason that she did not want the notoriety of a public sale in its enforcement; and thereupon the agreement was made for the pledge in question. We think the parties therein contemplated private sales by the pledgee, conditioned only as to the price to be received. The right of notice was thereby waived by the pledgor. Jones on Pledges, §611.

The rugs moved by Bates from the Grant farm to the house at Old Bennington, were within the agreement of pledge, but were to remain at the Grant farm while the defendant occupied the building there, and when she ceased to do so the property there (covered by the agreement) was to be moved into the house at Old Bennington and, with the rest of the pledge, kept there until sold or the indebtedness was satisfied. The removal of the rugs was during her occupancy of the Grant farm, but it did not appear when, nor is it expressly found whether such removal was with or without her consent. It was not essential to the validity of the pledge that all the property should be delivered to the pledgee at the same time, nor at the time of making the agreement. As to any of the property not then delivered, the pledge took effect upon subsequent delivery made in performance of the contract. *American Pig Iron etc. Co.* v. *German,* cited above. The irregularity, if any, connected with the removal of these rugs, was only as to time, and on the facts found the court below might well infer, and we assume it did infer, that if there was such irregularity, it was waived by the defendant.

Finally it is argued that the court was without jurisdiction to take an accounting between the parties. One of the remedies had by the pledgee was to file a bill in chancery in the nature of a foreclosure bill and proceed to a judicial sale of the pledge. *White River Savings Bank* v. *Capital Savings Bank and Tr. Co.,* 77 Vt. 123, 59 Atl. 197, 107 Am. St. Rep. 754. It is said in that case that whenever the purpose of the pledge is satisfied, the right to the surplus, if any, is in the pledgor or some one having

an interest in the general property under him. This involves an accounting as an incident to the remedy.

*Decree affirmed and cause remanded.*