J. L. Cottrell, Appellee, v. Albert W. Gerson, Appellant.

414

* See Callaghan's Illinois Digest, same topic and section number.

416

Opinion filed July 21, 1938.

TERRY, GUELTIG & POWELL, of Edwardsville, for appellant.

L. H. HOLLAND, of Wood River, and ROSCOE FORTH, of Granite City, for appellee.

MR. JUSTICE STONE delivered the opinion of the court.

This is a replevin suit brought by the plaintiff appellee, J. L. Cottrell, the tenant, hereinafter referred to as the plaintiff, against the defendant appellant, Albert W. Gerson, his landlord, hereinafter referred to as the defendant, seeking to recover possession of certain barber shop furniture and fixtures owned by the plaintiff and allegedly wrongfully taken and detained by the defendant, and damages for their detention, or damages for their conversion. The cause was tried before the court and a jury. A verdict was returned finding the issues for the plaintiff, finding the right to possession of the property in the plaintiff, and assessing his damages for the detention thereof at $1,640. A remittitur of $540 was accepted by the plaintiff, at the court's suggestion, a motion for a new trial was denied, and from the judgment thereafter rendered for the return of the property to the plaintiff and for damages for its detention in the amount of $1,100, the defendant appeals.

The material facts are: the defendant owned the building located at 19 East Ferguson avenue, in Wood River, Illinois. By a written lease dated July 1, 1931, the defendant leased a portion of the premises to the plaintiff for the term of one year, beginning July 20, 1931 and ending July 19, 1932, to be used by the plaintiff as a barber shop. The rent was $600 for the term, payable in monthly instalments of $50 a month in advance on the 15th day of each month.

After December, 1931, the plaintiff lessee became delinquent in his rent, until at the end of the original term of the lease, he owed the defendant $300 in past due rent. On July 20, 1932, the plaintiff and his wife,

Grace Ellen Cottrell, gave the defendant a judgment note, dated that day, in the amount of $300 due one day after date, and without interest. The parties evidently had in mind the delinquent rent at the time the note was given, but they differ as to whether the note was given in payment thereof or merely as further security therefor or evidence thereof.

At or about the time the original term of the lease expired, in July, 1932, the parties had considerable discussion as to the future occupancy of the premises. The plaintiff evidently could not, if he was to continue in possession, pay for the future the same rent as provided by the written lease,—$50 per month,—and the parties finally agreed upon a rental of $35 per month, payable in advance. Whether the understanding was that the continued occupancy by the plaintiff at that rent should be on a month to month tenancy basis, or for another term of a year as upon a holding over, upon the same terms as provided in the original lease, except as modified by the reduction in the rent, is also a disputed question,—the plaintiff claiming that the lease was terminated and the arrangement for the future was upon a month to month tenancy basis, and the defendant claiming that the plaintiff was to continue in possession under the original lease, for another year, except as to the change in the amount of the rent.

In any event, the plaintiff continued to occupy the premises after the end of the term of the original lease, with the consent of the defendant, until December 24, 1932, at which time the plaintiff left the premises and did not thereafter occupy them. Prior to then, the plaintiff, though he had paid some rent in the meantime, had again fallen behind on his rent, and owed the defendant, on December 20, 1932, $10 for past rent and $35 for rent for the ensuing month,—up to January 20, 1933. Further discussion then ensued

as to the payment by the plaintiff of the amount evidenced by his note, $300, and the $10 and $35 items. The defendant insisted upon the payment of $345 or that the plaintiff surrender the premises and finally on December 24, 1932 made a written demand therefor on the plaintiff. The defendant had issued a distress warrant claiming $345 rent due but this was never served on the plaintiff and nothing further was ever done about that matter.

The plaintiff apparently indicated that he could not immediately pay the $300, but would pay the $10 and the $35 items. The defendant was evidently fearful that the plaintiff might move out and that he would lose his rent. At any rate the result was that the plaintiff finally on December 24th turned his key to the premises over to the defendant. The parties differ as to the terms upon which the key was turned over and as to the legal significance thereof. On the evening of that same day, the plaintiff called on the defendant and tendered him in cash $14.80, being the $10 item for accrued rent for the month ending December 20th, and $4.80 for the rent accrued from December 20th to the 24th. The defendant refused the tender. The plaintiff then tendered in cash $314.80, being the amount due on the note for $300, and the respective items of $10 and $4.80. The defendant also refused that tender.

The defendant continued to operate the barber shop using the property which is the subject matter of this suit from December 24, 1932 on. Shortly after December 24th, the defendant prepared a so-called "Landlord's Sale Notice," a copy of which was mailed to the plaintiff, giving notice that he would sell the fixtures on January 16, 1933, to satisfy the rent, claiming authority to do so under the terms of the lease of July 1, 1931. The plaintiff made another cash tender to the defendant on January 14, 1933 of $314.80, which

was again refused, and on January 16th instituted this replevin suit. The proposed sale by the defendant was never held.

The suit having been begun and some pleadings having been filed prior to January 1, 1934, the provisions of the Civil Practice Act in that regard are not applicable.

The pleadings seem unnecessarily complicated. Pleadings are intended to be helpful to the court in reaching an issue or issues, and in gaining an understanding of a case. They should not become so confused as to be a hindrance rather than a help in attaining those ends. We shall not endeavor to set them out in detail. So far as material, though, the declaration alleged a wrongful taking and detention; a wrongful detention; a conversion; and also contained a count in trespass on the case for an alleged wrongful taking. Demurrers by the defendant thereto were overruled and the defendant then pleaded over. The pleas in substance denied the taking and detention; alleged the goods to be those of the defendant and not the plaintiff; set up an alleged voluntary pledge thereof by the plaintiff as security for the rent; alleged the taking was for rent in arrears; and alleges the taking was pursuant to a lien reserved in the lease of July 1, 1931. Certain replications and additional replications were filed by the plaintiff, to which the defendant demurred. The plaintiff then filed a new so-called fourth count, to which the defendant also demurred. The defendant's last demurrers were evidently in part sustained and in part overruled, and all pleas previously filed by the defendant were extended to the new fourth count. Later additional and amended replications were filed by the plaintiff, to all of which the defendant demurred, which demurrers were overruled and the defendant then rejoined thereto.

Section 1 of the Replevin Act (ch. 119, Ill. Rev. Stat. 1937, sec. 1 [Jones Ill. Stats. Ann. 109.499]), provides:

"That whenever any goods or chattels shall have been wrongfully distrained, or otherwise wrongfully taken or shall be wrongfully detained, an action of replevin may be brought for the recovery of such goods or chattels, by the owner or person entitled to their possession, in any court of competent jurisdiction."

There is no question in this case but that the plaintiff was and is the owner of the property in dispute. Nor is there any question but that the defendant has taken and detained the property. The primary issue at the outset, therefore, is whether the defendant has *wrongfully* taken and detained the property. That depends upon, first, whether the defendant landlord had any legal right so to take and detain the property under the circumstances of this case, either at common law or by virtue of some statute, and, if not, then, second, whether the defendant had such right by virtue of some voluntary act of the plaintiff lessee in giving the defendant a lien thereon by the written lease (if it was in effect at the time of the taking and detention), or by making a voluntary pledge thereof as security for rent.

At common law a landlord had no lien upon any property of his tenant as security for the rent or for anything else. The tenant's property was his own, to do with as he pleased, subject to no incumbrance in favor of the landlord. The landlord at common law had the right to bring a distress proceeding against the tenant for rent and if he did he thereby acquired in effect a lien on the tenant's property for the past due rent. But until the distress proceedings were actually brought he had no right to detain the tenant's property. This has been changed somewhat in England by the statute of Anne (8th Anne, ch. 14), but, insofar as that statute changes the common law it is not in force in this State because, among other reasons, it is of a date later than the fourth year of the reign of James I. The common law rule, as we understand, is the law in Illinois today, except insofar as it has been modified

or changed by some Illinois statute. (19 Ruling Case Law pp. 975, 976; *Morgan v. Campbell* (1874) 22 Wall. (U. S.) 381, 22 L. Ed. 796; *Hadden v. Knickerbocker* (1873) 70 Ill. 677; *Herron v. Gill* (1884) 112 Ill. 247; *First Nat. Bank of Joliet v. Adam* (1891) 138 Ill. 483; *A. N. Kellogg Newspaper Co. v. Peterson* (1896) 162 Ill. 158; *Powell v. Daily* (1896) 163 Ill. 646; *Rowland v. Hewitt* (1885) 19 Ill. App. 450; *Van Wegen v. Grand Aerie of Fraternal Order of Eagles* (1918) 212 Ill. App. 575; *Faubel v. Michigan Blvd. Bldg. Co.* (1934) 278 Ill. App. 159.

Such statutory changes as have been made in the common law in our State in these respects are found in chapter 80, Ill. Rev. Stat. 1937 (Landlord and Tenant), sections 1 *et seq.* [Jones Ill. Stats. Ann. 72.01 *et seq.*]. No provision of those statutes specifically changes the common law rule and specifically gives the landlord a lien on any of the tenant's property except section 31, which gives the landlord a lien on the crops grown or growing on the demised premises,—a type of property not here involved. The absence of any specific provision in the statutes giving a landlord a lien on any other property of the tenant, and the presence of but this one provision conferring such a lien on that one type of property, crops, together with the provisions of section 34 of that chapter [Ill. Rev. Stat. 1937, ch. 80, § 34; Jones Ill. Stats. Ann. 72.35], to the effect that: "Subject to the right of the landlord to distrain for rent a tenant shall have the right to remove from the demised premises all removable fixtures erected thereon by him during the term of his lease, or of any renewal thereof, or of any successive leasing of the premises while he remains in possession in his character as tenant."—are strongly persuasive that the common law rule as to the landlord's right to detain the property of his tenant for rent is still the law in Illinois.

No distress proceedings having ever been brought and perfected in this case, the defendant landlord had no lien on the property of his tenant here in question, either at common law or by virtue of any statute, and therefore had no right to take and detain it on that account.

Nor do we think the taking and detention can be justified as having been voluntarily provided for by the plaintiff tenant under a supposed landlord's lien for rent provision in the original written lease of July 1, 1931. The term of this lease expired July 19, 1932. If it was no longer in force in December of that year that would be a sufficient answer to the defendant's argument on that score. The defendant has urged, though, and we think with considerable merit, that though the original term of the lease had expired in July of 1932, it was nevertheless still in force, except as modified by the reduction of the rent, in December of 1932, because the plaintiff tenant by his continued occupancy of the premises after July 19, 1932, thereby became a tenant as upon a holding over for another year (that being the original term of the lease) upon the same terms as were provided therein, including the supposed lien for rent provision, except as so modified as to the rent.

Where a tenant under a lease for a year or years holds over after the expiration of the term of the lease, there being no new leasing agreement, the landlord may, at his election, treat the tenant as a trespasser and evict him, or may treat him as a tenant from year to year thereafter upon the same terms as in the original lease, or (if those have been partly changed), upon the terms of the original lease as so modified. A ''holding over'' is presumed by the law from the mere continued occupancy by the tenant of the premises, in the absence of proof of a new agreement between the par-

ties as to such occupancy. The election to treat the tenant as a holdover tenant is exclusively that of the landlord, and such a holdover tenancy may conceivably exist even though contrary to the tenant's intention. The tenant's intention alone is not a material matter. Necessarily, though, these rules as to holdover tenancies have no application where there is a contrary mutual understanding as to the tenant's continued occupancy of the premises. If there is such an agreement, that takes the place of the presumption as to holding over that the law otherwise raises. But the burden of establishing such an agreement is upon the tenant. The landlord does not have the burden of disestablishing it. In the absence of a preponderance of the evidence establishing such contrary agreement, the presumption of law as to a holding over upon the terms of the original lease or upon those terms as modified applies. 16 Ruling Case Law pp. 1160–1167; *Prickett v. Ritter* (1854) 16 Ill. 96; *McKinney v. Peck* (1862) 28 Ill. 174; *Clinton Wire Cloth Co. v. Gardner* (1881) 99 Ill. 151; *Goldsbrough v. Gable* (1894) 152 Ill. 594; *Condon v. Brockway* (1895) 157 Ill. 90; *Weber v. Powers* (1905) 213 Ill. 370; *Eppstein v. Kuhn* (1906) 225 Ill. 115; *Miller v. Ridgely* (1885) 19 Ill. App. 306; *Johnson v. Foreman* (1891) 40 Ill. App. 456; *Rand v. Purcell* (1894) 58 Ill. App. 228; *Berkowsky v. Cahill* (1897) 72 Ill. App. 101; *Kelly v. Armstrong* (1908) 139 Ill. App. 467; *Bockmann v. Davis* (1912) 172 Ill. App. 505; *Sherriff v. Kromer* (1924) 232 Ill. App. 589; *Weiss v. Danilczik* (1931) 262 Ill. App. 551.

Substantially the only testimony in the case at bar relating to this matter of holding over is that of the plaintiff and the defendant. In view of the presumption of a holding over which arises from the continued occupancy of the premises and of the fact that the burden is on the plaintiff tenant of establishing by a preponderance of the evidence that there was a differ-

ent new agreement as to the future occupancy thereof and that there was not a holdover we do not think the plaintiff has sustained that burden and believe under the circumstances of this case that the tenancy after July 19, 1932 was a hold over tenancy from year to year upon the terms of the original lease except as modified as to the amount of the rent.

We have, though, examined the lease of July 1, 1931 and find therein no provision reserving to the defendant landlord a lien for rent or anything else upon any property of the plaintiff tenant. We can find no definite provision in the lease specifically reserving such a lien. There is a provision to the effect that the tenant's right to possession shall terminate upon his default as to any covenants on his part, without notice, and giving the landlord the right in such event immediately to re-enter. There is also a provision as to confessing judgment for any payments due from the tenant. But neither of those provisions gives the landlord any lien on any of the tenant's property. In fact there are only two places in the lease where the word "lien," meaning the so-called landlord's lien for rent, is used. One is the clause that: "If at any time the said lessor shall consent in writing to the subletting in whole or in part of said premises, said lessee shall be responsible for all acts of such sub-lessee, and lessee shall not be released from any obligation herein contained, and *all property of any sub-lessees whether subject to legal exemption or not shall be bound and subject to the lien given as above for all payments to be made under this lease.*" And the other is the clause immediately following, that: "It is further agreed that in case default be made in the payment of the rent or other payments to be made under the terms of this lease, or in case of bankruptcy, failure or assignment for the benefit of creditors made by the lessee, then the lessor may at his option declare the full amount of the

unpaid portion of the rent for the entire term of this lease to be due and payable together with all court costs, attorney's fees or other expenses in connection therewith for which the lessor may have become liable, and any claim made therefor by the lessor shall be deemed his election to so declare the same due and payable and *the lessor's lien herein reserved shall thereupon extend to all property of the lessee on the premises leased at the time of such failure. . . .*" (Italics ours).

Neither of these clauses, in themselves, specifically and definitely reserves a lien to the landlord on any of the tenant's property for anything. Both apparently refer back to some supposed lien provision supposedly included in an earlier part of the lease,—the first clause using the language, . . . "the lien given as above,"—and the second clause using the language, . . . "the lessor's lien herein reserved. . . ." But neither clause in itself confers a lien, and we find no other lien provision either preceding or succeeding those clauses. The burden of establishing a landlord's lien by virtue of a written lease is upon the lessor, and the lease, in this regard at least, will be construed more strictly against the lessor, if there is ambiguity. We do not think the defendant landlord has met that burden in the present case, and are of the opinion that the provisions of the lease are too indefinite, vague, and ambiguous to be considered as creating such a lien on any of the tenant's property. 16 Ruling Case Law pp. 699, 700, 978; *Borden v. Croak* (1889) 131 Ill. 68; *First Nat. Bank of Joliet v. Adam* (1891) 138 Ill. 483; *Downey v. Chicago Title & Trust Co.* (1899) 86 Ill. App. 664.

Assuming therefore the lease to have been in effect in December of 1932, no provision thereof gave the defendant landlord a lien on the plaintiff tenant's

property, and consequently it did not authorize the taking and detention thereof.

Nor finally, do we think the taking and detention can be justified as having been voluntarily permitted by the plaintiff tenant on account of a supposed pledge of the property as security for the payment of the rent. Such pledge, if any, must be inferred from the conduct of the parties, and particularly their acts on December 24, 1932. There was no written pledge agreement. The plaintiff tenant did turn over to the defendant his key to the premises in which the property was located. But the testimony is conflicting as to the circumstances under which this act was done, and the parties differ as to the legal inference, if any, to be drawn therefrom. The burden of establishing a pledge was upon the defendant, and though the delivery of a key to premises may upon occasion and under some circumstances constitute a symbolical delivery of the goods located therein and effect a valid pledge thereof (*Keiser v. Topping* (1874) 72 Ill. 226; *Hagemann v. Hagemann* (1903) 204 Ill. 378; *Vining v. Gilbreth* (1855) 39 Maine 496; *Thomas v. Graves* (1914) 89 Vt. 339; *Nevan v. Roup* (1859) 8 Iowa 207); the delivery of a key does not necessarily, in and of itself, always have that legal effect. The matter depends largely on the facts and intention of the parties. The testimony on this issue being conflicting and the burden of proof in that regard being on the defendant, we do not feel justified in disturbing the verdict of the jury and judgment of the court below for that reason. The jury evidently concluded that there was no pledge, and we cannot say this was against the weight of the evidence.

The defendant having taken and detained the property in question without a distress proceeding having been brought, and he having had no legal right to do so at common law or by statute, or by the voluntary

act of the plaintiff in giving a lien therein or in pledging the same, the taking and detention were wrongful and it would seem that replevin would lie.

The defendant urges, though, that replevin does not lie at the suit of a tenant to recover his property from the landlord under such circumstances as exist in this case because here some rent was admittedly due at the time the suit was begun. We do not regard that as a correct principle of law. Section 1 of the Replevin Act [Ill. Rev. Stat. 1937, ch. 119; Jones Ill. Stats. Ann. 109.499], above, provides, as the basic principle underlying a replevin suit, that: ". . . whenever any goods or chattels shall have been wrongfully distrained, or otherwise wrongfully taken or shall be wrongfully detained, an action of replevin may be brought. . . ." The primary, if not only inquiry on this phase of the matter in such a suit is: was the property *wrongfully* distrained, or *wrongfully* taken or detained? If wrongfully distrained or taken or detained, replevin will lie, the other prerequisites being present. If not, it will not lie. There is no qualification therein that replevin will not lie, assuming there has been a wrongful distraint or wrongful taking or detention, merely because the plaintiff owes the defendant some rent at the time the suit is brought. That the plaintiff may owe the defendant rent at the time the replevin suit is begun is perfectly immaterial, if there has been a wrongful distraint or taking or detention (the other prerequisites to replevin being present). The plaintiff nevertheless has a cause of action in replevin and the suit will lie. The defendant might, if rent be due, conceivably attempt to recoup or set off the rent in the replevin suit, or bring a separate suit against the tenant therefor, but those are different matters and do not go to destroy the plaintiff's cause of action in replevin. 23 Ruling Case Law pp. 854–856, 873–874. The plaintiff does appear to owe the defend-

ant some rent, so far as the record indicates, but the defendant did not seek to recoup or set this off in this suit. Whether that matter has been otherwise adjusted or a separate suit been brought therefor we are not advised.

We have examined the cases referred to by counsel for the defendant and other authorities and find nothing in them that sustains the principle urged by the defendant in cases where the facts are as they are here, nor that mitigates against the view we take of the question. *Lindley v. Miller* (1875) 67 Ill. 244, and *Hare v. Stegall* (1871)ʼ 60 Ill. 380 simply hold that a distress for rent is proper and legal where there is *any* rent due, and that, therefore, where there is *some* rent due and a distress has been brought, a replevin suit will not lie at the instance of the tenant to recover the property, even though the distress may have been excessive. 16 Ruling Case Law pp. 1007, 1028, 1029. This for the reason that in such instances the property was not *"wrongfully* distrained" and the case did not therefore come within section 1 of the Replevin Act. The tenant's remedy in such a case was not replevin but trespass on the case on account of the excessive distress. In those cases a distress had been brought and properly brought because at least some rent was due. There was no wrongful taking by the landlord and necessarily no basis for a cause of action in replevin. In the instant case no distress proceedings were brought,—those started by the landlord being abortive. Not having brought distress, the landlord had no right to detain the property. There therefore was a wrongful taking and detention, and replevin lies. *Colean Mfg. Co. v. Jones* (1905) 122 Ill. App. 172; *Wetsel v. Mayers* (1879) 91 Ill. 497; *Frink v. Pratt & Co.* (1889) 130 Ill. 327; and *Lillard v. Noble* (1896) 159 Ill. 311, all involve only the landlord's statutory lien on crops grown or growing on demised premises, the methods

for its enforcement, and the conflicting rights of the landlord, the lessee, and third parties, and have no bearing on the question immediately at hand in this case. In *Atkins v. Byrnes* (1874) 71 Ill. 326, also, a distress proceeding had been brought, which alone distinguishes it from the present case, and further, the principal matters there discussed were whether the right to distrain was lost by the acceptance by the landlord of a chattel mortgage for the rent, and whether distraint could be had before the expiration of the term if rent was due, which have no application to the present case.

In view of our conclusion on this question and on the question of whether there was or was not a voluntary pledge of the property, whether the plaintiff did or did not make a proper tender of the rent due either before or at the time the suit was brought would seem to be immaterial and we shall therefore not discuss that issue.

It is also urged by the defendant that when the property in dispute was not taken on the replevin writ, the plaintiff could only thereafter proceed in trover and that the counts in the declaration in trespass on the case are improper in a replevin suit. Without discussing the merits of the defendant's argument on this score, it appears that the defendant demurred to the declaration and to various other pleadings of the plaintiff and these pleading questions appear to have been raised by the demurrers. So far as it is material, the defendant's demurrers were overruled and he pleaded over in each instance. He did not stand by any of the demurrers.

It is a well settled rule of common law pleading that where a party demurs to a pleading and the demurrer is overruled and the party pleads over, that generally constitutes a waiver of the demurrer and the party cannot raise the questions presented by the de-

murrer upon a subsequent appeal. If the party de-
murring desires to preserve the question presented by
the demurrer, he generally must stand by it and not
plead over, after it has been overruled. This rule does
not apply if there is such a substantial defect in the
pleading demurred to as would render it insufficient to
sustain a judgment, but we do not believe the plain-
tiff's declaration is here subject to such a substantial
defect. The defendant here, therefore, having failed
to stand by his demurrer or demurrers after they were
overruled, and having pleaded over, waived the ques-
tions thereby raised and cannot now assert them on
appeal. Puterbaugh, Common Law Pleading and Prac-
tice, 10th ed., secs. 103 and 104; *Beer v. Philips* (1822)
Breese (Ill.) 44; *Gilbert v. Maggord* (1838) 1 Scam
(Ill.) 471; *Camp v. Small* (1867) 44 Ill. 37; *Shreffler v.
Nadelhaffer* (1890) 133 Ill. 536; *Heimberger v. Elliot
Frog & Switch Co.* (1910) 245 Ill. 448; *McGovern v.
City of Chicago* (1917) 281 Ill. 264; *Berry v. Turner*
(1917) 279 Ill. 338; *McFadden v. Fortier* (1858) 20
Ill. 509; *Foltz v. Hardin* (1891) 139 Ill. 405; *Chicago &
Alton R. Co. v. Clausen* (1898) 173 Ill. 100.

The defendant also contends that the $300 note given
by the plaintiff and his wife on July 20, 1932 was not a
payment of the rent in that same amount which was
then due. We think this point, if well taken, is wholly
immaterial, for we find nothing in the judgment below
holding to the contrary, or, for that matter, holding
either way on that question, and in no event does the
judgment below depend for support upon that matter.

The defendant also complains of the refusal by the
court of certain instructions requested by him and of
the giving of certain other instructions requested by
the plaintiff. The defendant's first and third instruc-
tions, which are substantially the same, and which were
refused, relate generally to the matter of a holdover
tenancy and the applicability during the holdover

period of the terms of a prior lease. They, in general, correctly state the abstract principle of law to which they relate, but they latently assume that there was some provision in the original lease in this case which gave the landlord a lien on his tenant's property, or authorized him to detain it for rent, without a distress proceeding. In view of our conclusion on that question, the refusal of these instructions was either not error, or was immaterial and not reversible error.

The defendant's second and fourth instructions, which were also substantially the same, and which were refused, relate generally to a landlord's supposed legal right to seize and hold a tenant's personal property for rent. The legal questions therein involved we have already discussed. We do not think these instructions state a correct principle of law, and therefore the refusal thereof was not error.

The plaintiff's first instruction, which was given, relates generally to the elements of a cause of action in replevin. The legal questions therein involved we have already discussed. In general, we think it correctly states the principle of law to which it relates, and the giving thereof was, therefore, not error.

The plaintiff's second instruction, which was given, was: "The Court instructs the Jury that if you believe from the preponderance of the evidence that the plaintiff was entitled to possession of the property in question when this suit was commenced, and that it had been wrongfully taken from the plaintiff's possession by the defendant, then you will be required to determine the amount that the plaintiff has been damaged, if any, and in finding the amount of such damage, if any, you may consider that the reasonable rent would be for the said property in question for the period of time the property in question was wrongfully detained, or wrongfully withheld by the defendant, insofar as the same is shown by the evidence in the case." The

defendant argues that this was erroneous because it permitted the plaintiff to recover damages for the detention of the property in suit for a period after the commencement of the suit. The property in the case at bar was not returned to the plaintiff at the beginning of the suit, but was retained by the defendant, he having given a forthcoming bond for that purpose, as permitted by the Replevin Act. Section 14 of that act provides, *inter alia,* that where a forthcoming bond is given, one of its conditions shall be "that the defendant will pay all costs and damages that may be adjudged against him in such action." Section 18 provides, *inter alia,* that as to any property not found and delivered to the plaintiff in the replevin suit, "the plaintiff, if he shall recover, shall be entitled to judgment for the value thereof or his interest therein, and such damages as he shall have sustained by reason of the wrongful taking and detention." And section 23 provides: "If judgment is given for the plaintiff in replevin he shall recover damages for the detention of the property while the same was wrongfully detained by the defendant."

The damages which a plaintiff is entitled to recover in a replevin suit, if he succeeds, for the detention of the property are intended to be full indemnity to him for the damage he may have suffered. 23 Ruling Case Law p. 908. There is nothing in these various provisions of the Replevin Act limiting the plaintiff to a recovery only for the time of detention prior to suit. They are in very general and broad language, and are sufficient to permit damages to be assessed for the entire period the property is detained, including the time after the commencement of the suit, and not merely for the period prior to suit. To permit the successful plaintiff to recover damages only for the period elapsing prior to suit would certainly not adequately indemnify him for the loss suffered by the

defendant's unlawful detention of the property. Particularly is this true where, as here, the defendant has given a forthcoming bond and thus prevented the return of the property to the plaintiff at the beginning of the suit. The defendant could have surrendered the property to the plaintiff at the commencement of this suit and awaited its outcome, and thus have prevented the further running of damages for the detention thereof. This the defendant did not do. His counsel has referred us to no authority nor have we found any inconsistent with this view. We do not think the plaintiff's second instruction was erroneous.

While these instructions given for the plaintiff did not refer specifically to any of the defendant's several defenses, there was no requirement that they do so. The instructions which were given for the defendant seem to present adequately and fairly such defenses as were raised by his pleas and as could properly be raised.

The defendant argues, though, that the damages awarded for detention of the property were excessive. The measure of damages for detention in a replevin suit of this type, where the plaintiff recovers, and where the property involved has a usable value, is the reasonable net rental value thereof. 23 Ruling Case Law pp. 911–913. The defendant here has unlawfully deprived the plaintiff of the use of the property and should pay a reasonable rental therefor as damages for the period of time at least from December 24, 1932, the beginning of the detention, to June 5, 1936, the date of the trial,—approximately 41 months. This appears to have been the measure of damages followed by the court below. The testimony as to this reasonable rental varies from $40 a month for the whole shop, which one of the witnesses for the defendant, a barber, paid the defendant for the rental of the shop for a time after December 24, 1932, to $60 a month for the rental of the barber fixtures, which the testimony for the

plaintiff tended to establish. The verdict as to damages was for $1,640, which amounts to $40 a month for the 41-month period. The court below required a remittitur of $540, which was accepted by the plaintiff, and the final judgment entered as to damages was for $1,100, which amounts to approximately $26 a month for the 41-month period. The testimony as to the value of the property ranged from $345 to $1,600, and its probable original cost was evidently somewhere near $1,700.

Damages for the detention of property of this type may conceivably under some circumstances amount to more than the value of the property itself, but on the other hand, the damages for such detention should not be permitted to become so far out of line with the value of the property as to be clearly disproportionate and oppressive. *National Contract Purchase Corp. v. McCormick* (1931) 264 Ill. App. 63; *James B. Clow & Sons v. Yount* (1900) 93 Ill. App. 112; *Alley v. McCabe* (1893) 147 Ill. 410. The matter of damages in this, as in most cases, is not an easy problem. They are necessarily somewhat speculative, but, if fairly justified by the evidence there is little a court of review can do. The verdict, as remitted, $1,100, is justified by the testimony in the record, and we cannot say that it is contrary to the weight of the evidence on this matter.

The principal point made by the defendant's motion for a new trial, other than the matters already discussed, so far as it is here argued, is that the court below erred in refusing to continue the case, as requested by the defendant, when it was called for trial, on account of the unexpected appearance, after the jury was sworn and the opening statements made, of Roscoe Forth, of Granite City, Illinois, as one of the attorneys for the plaintiff,—Mr. Forth not having theretofore appeared of record for the plaintiff, and the defendant and his counsel having been surprised thereby. After Mr. Forth appeared the defendant was

offered by the plaintiff and the court the privilege of further interrogating the jurors as to their knowledge of or acquaintanceship, if any, with Mr. Forth, and of excusing any of the jurors who might show prejudice on account thereof. The defendant refused further to interrogate the jurors, and the court then proceeded to do so. The record indicates, at this point and elsewhere, that none of the jurors were acquainted with Mr. Forth, knew anything about him, or had ever transacted any business with him. As to the further matter of the supposed close acquaintanceship of the trial judge and Mr. Forth, the defendant has not made a case showing anything in the least improper, in our judgment, in this connection or anything which would tend to indicate bias on the part of the trial judge. Under these circumstances the defendant was not prejudiced by the unexpected appearance of new counsel for the plaintiff, and there appears to have been no abuse of discretion by the trial judge. The court did not err in refusing to continue the case and in overruling the motion for a new trial insofar as it concerned these matters.

Such points as are made by the defendant in his errors relied upon for reversal as have not been briefed and argued will not be considered. We will not search the record for possible error. Each of the points made which have been argued have been heretofore considered and disposed of specifically or in effect. Some of them, if errors at all, have been waived by the defendant; some of them, if errors at all, related to immaterial matters and were not prejudicial to the defendant; and the balance of them do not state proper legal principles, and do not therefore constitute error.

The judgment below will be affirmed, with costs.

*Affirmed.*