(No. 24901.—)

J. L. COTTRELL, Appellee, *vs.* ALBERT W. GERSON, Appellant.

*Opinion filed February 15, 1939—Rehearing denied April 5, 1939.*

175

TERRY, GUELTIG & POWELL, and BROWN, HAY & STEPHENS, for appellant.

L. H. HOLLAND, and ROSCOE FORTH, for appellee.

Mr. JUSTICE JONES delivered the opinion of the court:

J. L. Cottrell instituted a replevin suit in the circuit court of Madison county against Albert W. Gerson, his landlord, to recover possession of certain barber shop furniture and fixtures, with damages for their retention or conversion. A verdict finding plaintiff was entitled to possession of the property and assessing damages for detention at $1640, was returned. Upon a *remittitur* reducing the dam-

ages to $1140, judgment was entered on the verdict and affirmed by the Appellate Court for the Fourth District. The cause is here by an appeal from the judgment of the Appellate Court on a certificate of importance.

Under a written lease for one year beginning July 20, 1931, plaintiff occupied with his barber shop a portion of a building owned by defendant in Woodriver. The rent for the term was $600, payable in monthly installments of $50 in advance on the fifteenth day of each month. Plaintiff paid his rent on the twentieth of each month up to and including December 20, 1931. Thereafter, he became delinquent and made no further payment up to the expiration of the term, leaving $300 unpaid. On July 20, 1932, he and his wife executed a judgment note to defendant for that amount, due one day after date, without interest. About this time, plaintiff told defendant he could not pay $50 a month for the premises and it was agreed that he should continue in possession at a rental of $35 per month, payable in advance each month. Plaintiff continued in possession until December 24, 1932. At that time he owed $10 of the rent due in November and had not paid the $35 due in December. From the beginning of the new arrangement none of the rent was paid in advance, and defendant permitted it to be paid in various amounts after the due dates.

On December 24, defendant called the plaintiff into his office next door and handed him a written demand for the payment of $345, threatening distraint unless the plaintiff paid the amount immediately. Plaintiff said he owed defendant $300 for a note but only owed $45 for rent. A constable with a distress warrant, signed by defendant, was present in the room. After some discussion, plaintiff turned the key of the barber shop over to the defendant and the distress warrant was not served. Plaintiff then went back to the barber shop. J. H. Hubbard, a barber working there, then went into defendant's office and defendant placed

him in charge of the barber shop as tenant. On Hubbard's return to the barber shop, he told plaintiff he could work there as a barber on a seventy per cent basis, furnishing the gas and light. Plaintiff told Hubbard and defendant he would not stand for it and went to see his attorney. Shortly thereafter, he returned to the shop and worked the remainder of the day, making arrangements with defendant to meet him that evening about a settlement between them. That evening plaintiff tendered defendant $14.80, as being the $10 balance unpaid for the month ending December 20, and $4.80 as rent accrued from December 20 to December 24, and offered to move out. The tender was refused. Plaintiff then tendered $314.80 as in full of his debt, and served a written demand on defendant for his furniture and fixtures. This tender and the demand for the furniture and fixtures were also refused. Plaintiff returned to the shop and after some verbal altercation about his leaving, he left and did not thereafter return.

Shortly after these occurrences, defendant mailed to plaintiff and posted a notice that the barber shop furniture, fixtures and supplies would be sold at public sale on January 16, 1933. The basis of the notice is an alleged lien in the written lease to secure the payment of the rent, and a default in payment. On January 14, plaintiff again tendered defendant $314.80 in full payment of the debt and it was again refused, defendant claiming plaintiff owed him $345. After the last tender plaintiff turned the $314.80 over to his attorney who deposited it in a bank to be available if defendant would accept it. Defendant was not advised of the deposit. The money remained in the bank at the time of the trial. On January 16, plaintiff filed an affidavit for replevin of the goods and a writ was issued. Defendant filed with the sheriff a forthcoming bond and the advertised sale was not held. When the suit was instituted, plaintiff deposited a check for $14.80, and another covering accrued costs, with the clerk of the court.

The pleadings are voluminous. So far as necessary they will be hereinafter noticed. The trial occurred at the June term, 1936. At the time of the trial, defendant had been in possession of the barber shop and plaintiff's equipment and had received the income therefrom ever since he turned it over to Hubbard on December 24, 1932, a period of forty-one months. Hubbard first paid defendant $10 per week rental and later operated the shop on a commission basis.

Defendant testified the agreement was that plaintiff was to turn the property over to him as security for the payment of the rent; that Hubbard was to be put in charge and plaintiff was to work in there the same as before; that when the rent was paid the property was to be turned back to plaintiff, and that, to avoid publicity, nothing was to be said about it.

Plaintiff testified that when he was called into defendant's office defendant told him he understood he was going to move out and beat him, and demanded immediate payment of the rent; that he told defendant he had no intention of moving, but defendant would not accept his statement and the key was turned over merely to guarantee the furniture would not be moved out. He testified the agreement was that he was to continue to operate the shop, and denied it was agreed Hubbard was to be put in charge as tenant, or that anything was said about the equipment standing good for the rent.

The first count of the declaration avers the taking of the goods and their unlawful detention. The second count, in trover, was withdrawn. The third count, in trespass on the case, avers an unlawful taking and detention. The fourth count avers a taking and an unlawful detention and use. Defendant's demurrer for misjoinder was overruled and he pleaded over. The pleas respectively traversed each count. Demurrers to plaintiff's replications were overruled and issues joined. Defendant insists the judgment must

be reversed for misjoinder of counts in trespass on the case. The suit was instituted and pleadings filed before the Civil Practice act went into effect. It is, therefore, governed by the provisions of the former Practice act.

It has always been the rule in this State that if a party wishes to have the action of the court in overruling his demurrer reviewed, he must abide by his demurrer. By pleading over, he waives his demurrer and the right to assign error upon the ruling. He does not waive innate and substantial defects in the declaration which would render it insufficient to sustain the judgment, and the question whether it is so far defective may be considered on review. The question which could be thus presented was not so broad as those questions which could be raised on demurrer, for the reason that defects in pleading may be aided by the pleadings of the opposite party, or be cured by the statute on Amendments and Jeofails, or by intendment after verdict. (*Chicago and Alton Railroad Co.* v. *Clausen,* 173 Ill. 100.) Section 6 of the statute on Amendments and Jeofails (Ill. Rev. Stat. 1937, chap. 7, par. 6) provides, among other things, that a judgment upon a verdict shall not be arrested or reversed for any mispleading. In *Chicago and Alton Railroad Co.* v. *Murphy,* 198 Ill. 462, the question of the sufficiency of a declaration because of a misjoinder of counts was raised by motion in arrest. We held that a misjoinder is a "mispleading" within the meaning of the statute, and affirmed a judgment on the verdict for the plaintiff. The defect here complained of is of the same character and is cured by the verdict.

. The Appellate Court held that plaintiff was holding over under the original lease, which was modified only as to the amount of rent; that the lease contained no provision for a lien on the property for rent or anything else, and that the property was not pledged as security for the payment of rent. The key, being turned over to insure plaintiff's engagement that he would not move the equipment, was a

pledge for that purpose. The delivery of the key was a symbolical delivery of the equipment. *Hagemann* v. *Hagemann,* 204 Ill. 378.

The question thus arises as to defendant's right to replevin the pledged property. Section 1 of the Replevin act (Ill. Rev. Stat. 1937, chap. 119, par. 1) provides: "Whenever any goods or chattels shall have been * * . * wrongfully detained, an action of replevin may be brought for the recovery of such goods or chattels by the owner or person entitled to their possession." The primary duty of a pledgee is to return the article pledged to the pledgor immediately upon the performance of the obligation for which the security was given, or on tender of such performance, and his refusal so to do amounts to a wrongful conversion. (21 R. C. L. "Pledge," sec. 37.) Plaintiff's engagement being to not move the equipment until the debt was paid, it follows that if he paid or tendered the full amount of the debt, he was entitled to an immediate return of the property. Although he was holding over under the original lease which called for payment of the rent in advance each month, it is to be remembered that during all the time he so held over the rent was never paid in advance, and defendant accepted it in various amounts at different times after its due date. We have held that the right to forfeit a contract is waived where the contract provides for prompt payment at fixed dates and payments are not so made, but have been made and accepted after they became due. (*Plummer* v. *Worthington,* 321 Ill. 450; *Monson* v. *Bragdon,* 159 id. 61; *Railway Conductors' Mutual Aid and Benefit Ass'n* v. *Tucker,* 157 id. 194; *United States Life Ins. Co.* v. *Ross,* 159 id. 476.) When the key to the barber shop was turned over to the defendant he immediately evicted plaintiff by renting the premises and the equipment to Hubbard. This amounted to an attempt to exercise a right of forfeiture for non-payment in advance, which defendant had waived.

The general rule is that eviction by the lessor suspends the rent and relieves the tenant from the payment of rent accruing after his possession ceases, but rent already accrued and overdue is not forfeited by the eviction. The rule that eviction suspends the payment of rent results from the meaning of the term "rent" and from the obligations of the relation between landlord and tenant. Rent is compensation for the use of the land, and what the tenant pays rent for is quiet possession, or beneficial enjoyment. When, therefore, the use or possession ceases, the consideration for the payment ceases. (*Grommes* v. *St. Paul Trust Co.* 147 Ill. 634.) It is also the rule that where a tenant has been wrongfully evicted before the expiration of the period for which he has, pursuant to the contract, paid rent in advance, he can recover back the rent so paid. If the rent is payable in advance and the tenant is evicted after rent has accrued and during the period for which it is payable in advance, the eviction will be a defense *pro rata* for the rent for such period, since if the rent has been paid in advance the landlord, by the eviction, becomes liable to pay back so much of the rent as answers to the time for which the tenant had been deprived of the occupation of the premises. (16 R. C. L. "Landlord and Tenant," sec. 460; *Alger* v. *Kennedy,* 49 Vt. 109.) The *Grommes case, supra,* did not concern an eviction under such circumstances.

From the foregoing, it is obvious that plaintiff tendered defendant the full amount which he could have recovered. Plaintiff thereby became entitled to a return of the property and defendant's detention of it thereafter was wrongful. A tender must be kept good by bringing the money into court. However, from the time defendant evicted plaintiff and took possession of the equipment, his demand was excessive in amount and he at all times refused to accept the amount actually due. This conduct relieved plaintiff from making a tender of the amount due. (*Rudin* v. *King-Richardson Co.* 311 Ill. 513; *Gorham* v. *Farson,* 119 id. 425.)

Being relieved from making a tender, he would not be obligated to pay the money into court. The foregoing disposes of defendant's contention that replevin will not lie when there is any rent due. Cases holding that when rent is due, and the property is distrained by an orderly proceeding, replevin will not lie, have no application here, where the property was wrongfully detained.

Under sections 14, 18 and 23 of the Replevin act, (Ill. Rev. Stat. 1937, chap. 119, pars. 14, 18, 23,) one of the conditions of a forthcoming bond is that the defendant will pay all costs and damages adjudged against him in such action, and if judgment is for the plaintiff he shall recover damages for the detention while wrongfully detained. Defendant could have surrendered the property to the sheriff when the writ was served, and thereby relieved himself of any liability for damages thereafter. He elected to risk liability for wrongfully detaining it until the termination of the suit. He brought himself within the terms of the statute and cannot now complain that damages were assessed for that period. The claim that the damages were excessive cannot be sustained. Where the property detained consists or horses, tools, implements of trade, etc., the party deprived of possession is entitled to the reasonable value of the use during the period of wrongful detention. (23 R. C. L. "Replevin," sec. 74.) Such recoveries in excess of the value of the property have been sustained. (*Alley* v. *McCabe,* 147 Ill. 410; *Wheeler & Wilson Manf. Co.* v. *Barrett,* 172 id. 610.) Defendant did not, on the trial, seek recoupment or to set off the rent. The evidence in this case is sufficient to justify the amount fixed by the judgment.

There was no error in denying defendant's motion for a continuance because plaintiff was represented by additional counsel after the jury was sworn. Full opportunity to re-examine the jurors was offered defendant and he refused to do so. Thereupon the court questioned the jurors and their replies showed that none of them had ever trans-

acted any business with the added counsel, or knew anything about him or were acquainted with him. Nor would the fact that the added counsel and the trial judge came from the same city and belonged to the same political party, have afforded a ground for change of venue.

The trial court refused an instruction to the effect that if plaintiff remained in possession of the premises after the expiration of the written lease without any new agreement except as to the amount of rent, the tenancy was on the terms and conditions of the written agreement except as modified. While the instruction was a correct statement of the law, giving it would not change the result. We have examined the other instructions given and refused.

Defendant wrongfully detained the property and under the statute plaintiff had a right to· replevin it, and to damages for the time it was so wrongfully detained.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*