INTERNATIONAL HARVESTER CREDIT CORPORATION, Plaintiff-Appellant and Cross-Appellee, v. BENNY H. HELLAND et al., d/b/a Newark Truck and Tractor, Defendants-Appellees and Cross-Appellants.

Second District No. 85—0749

Opinion filed December 10, 1986.—Rehearing denied February 18, 1987.

Thomas D. Graber and Jeffrey N. Given, both of Kirkland & Ellis, of Chicago, and Richard R. Solomon, of Aurora, for appellant.

Roger B. Gomien, of Gomien & Root, of Morris, for appellees.

JUSTICE LINDBERG delivered the opinion of the court:

International Harvester Credit Corporation (IHCC) appeals from a judgment of the circuit court of Kendall County ordering IHCC to return certain replevied property to defendants, Benny H. Helland (Helland) and Alvin C. Helland, d/b/a Newark Truck & Tractor, and awarding damages to defendants in the amount of $142,230. On appeal, IHCC contends that certain findings of the trial court are against the manifest weight of the evidence and that the trial court made certain errors in its damage award. Because our review of the evidence does not establish that a security agreement existed between IHCC and Leaders Equipment Company, Inc. (Leaders), we affirm that portion of the judgment directing return of the property to Helland. We reverse the damage award in favor of Helland as predicated on an erroneous theory, and we remand this cause for a new trial on damages.

IHCC is the wholly owned financing subsidiary of International Harvester Company (IH), a manufacturer of farm equipment. IHCC works closely with IH to provide floor-plan and retail financing to IH dealers and their retail customers pursuant to standardized terms and agreements.

The partnership known as Newark Truck & Tractor in Newark, Illinois, has been engaged in buying and selling new and used farm equipment, trucks, and construction equipment for over 23 years. The Hellands presently have a Ford dealership and also conduct farm-equipment auctions every two or three months. Benny Holland operated an International Harvester dealership for more than 10 years, between October 1964 and February 1975, before his dealer agreement was terminated.

Leaders Equipment Company, Inc., not a party herein, operated an International Harvester dealership located in Dunlap, Iowa, until February 25, 1983. Under paragraph 11 of its dealer agreement with IH, Leaders were prohibited from selling any new IH equipment prior to paying IH the full purchase price, unless the sale was made in the ordinary course of retail trade for the reasonable retail value of the items sold and Leaders secured full settlement from the retail customers on or before the delivery date. Leaders' dealer agreement also gave IH an unqualified right to terminate in the event Leaders "sells or makes an attempted sale or other disposition of any goods purchased under the agreement, upon which any part of the purchase price is unpaid, other than in the ordinary course of retail trade."

In May and June of 1982, Leaders purchased from IH five new tractors and one new disc harrow. Wholesale notes payable to IH were executed to cover the purchase price of the tractors and the disc harrow. IH executed the notes by typing Leaders' name on the notes as payor.

Prior to February 3, 1983, Leaders and Helland made an oral agreement over the telephone for the sale of the above-described new tractors and disc from Leaders to Helland in exchange for cash and trade-ins. During the first week of February, Helland's employee drove to Dunlap, Iowa, picked up the new equipment, and signed an IH "Retail Order Form" regarding the transaction. Helland agreed to pay $98,000 cash and to trade in three used tractors having a wholesale value of $9,650 in exchange for the new IH equipment.

Helland testified at trial that he agreed also to include as a trade-in a Steiger Panther II tractor with a wholesale value of $24,500. Leaders thereafter personally picked up all of the trade-in equipment except for the Steiger tractor, which could not be transported together with any other tractor. The Steiger tractor remained on Helland's lot at the time of appellate oral argument.

On February 18, 1983, Helland conducted an auction of farm equipment at its business premises in Newark, Illinois. Four of the tractors sold by Leaders to Helland were purchased at the auction. Only three of the four tractors were removed from Helland's place of business prior to March 11, 1983, when IHCC filed a complaint for replevin. On that day, an IHCC representative arrived at Helland's place of business and identified two tractors there as those which Leaders purchased from IH in May-June 1982. The IH representative then secured an order for writ of replevin dated March 11, 1983, in which the court waived the statutory notice requirement. The order recited that IHCC had established a *prima facie* superior right to possess the two tractors and disc and had demonstrated that it would ultimately prevail upon the underlying claim to possession. IHCC took possession of the two tractors and the disc on March 11, 1983, and currently retains possession of this equipment. A bench trial was held on August 24 and 26, 1983, to determine the parties' respective rights to the property. By written opinion dated December 8, 1983, the trial court granted Helland's motion for a directed finding made pursuant to section 2—1110 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—1110), concluding that the sale from Leaders to Helland was in the ordinary course of business. On January 3, 1984, the trial court entered a judgment order granting Helland's motion for judgment.

On February 2, 1984, IHCC filed a notice of appeal from the trial court's judgment, and defendants filed a cross-appeal from evidentiary rulings made by the trial court admitting certain documentary evidence. On February 7, 1985, this court filed its opinion dismissing the appeals because the record failed to show the entry of a final and appealable order and because none of the interlocutory appeal provisions was applicable. *International Harvester Credit Corp. v. Helland* (1985), 130 Ill. App. 3d 836, 474 N.E.2d 882.

On remand, the trial court conducted a hearing on damages on June 12, 1985. Following presentation of the evidence, the trial court entered a written opinion dated August 14, 1985, in which it awarded Helland $142,230 as damages for the fair value of the use of the two tractors and the disc during the 26 months of wrongful detention. The trial court judgment order dated August 20, 1985, provided that "Defendants be awarded damages for the wrongful detention and loss of use of the use of the property taken by the Plaintiff from the Defendants from the time it was taken through the date of this order in the amount of $142,230.00." The trial court denied IHCC's motion for reconsideration and reversal on September 4, 1985, and IHCC filed a timely notice of appeal on September 17, 1985.

■ Plaintiff's first contention is that it held fully protected security interests in the equipment. IHCC looks to two different sources to establish its security interest in the equipment: the five wholesale notes covering the tractors and the disc and the IH-Leaders dealer agreement. Section 9—203(1)(a) of the Uniform Commercial Code states that a security interest will not be enforceable against a debtor or third parties unless the debtor has signed a security agreement which contains a description of the collateral. Ill. Rev. Stat. 1983, ch. 26, par. 9—203(1)(a).

To satisfy the signature requirement regarding the notes, IHCC contends the trial court erred in excluding from evidence the plaintiff's Exhibit 2 (PX-2) consisting of the minutes of a special meeting of the directors of Leaders held on July 23, 1981, which authorized certain employees of IH to execute notes payable to IH in the amount of goods shipped to Leaders by IH. The second document in PX-2, denoted a signatory authorization dated July 23, 1981, gave IH authority to sign notes on behalf of Leaders. It contained the signature of "Gerald A. Leaders" as president and "Ardythe Leaders" as secretary.

After considering the arguments of the parties, the trial court excluded PX-2. IHCC makes the argument on appeal that PX-2 is a business record of IH and IHCC which the trial court improperly ex-

cluded from evidence. Supreme Court Rule 236 provides for the admission of business records as an exception to the hearsay rule. (103 Ill. 2d R. 236.) The rule states that any writing made as a memorandum or record of the act, transaction, or occurrence shall be admissible as evidence of the act, transaction, or occurrence "if made in the regular course of any business, and if it was the regular course of the business to make such a memorandum or record" at or near the time of the act, transaction, or occurrence. 103 Ill. 2d R. 236(a).

While the documents were retained in IH's files, they were produced by Leaders. Illinois courts in similar circumstances have concluded that a document produced by one party which is retained in the records of a second party does not qualify as a business record of the second party. (*Pell v. Victor J. Andrew High School* (1984), 123 Ill. App. 3d 423, 433-34, 462 N.E.2d 858, 866 (letter from manufacturer retained in file of other manufacturer properly determined by trial court not to be a business record of retaining company); *Benford v. Chicago Transit Authority* (1973), 9 Ill. App. 3d 875, 877-78, 293 N.E.2d 496, 498-99 (doctor's note in employee's file not a business record of employer because it was not made by employer); see *Smith v. Williams* (1975), 34 Ill. App. 3d 677, 680, 339 N.E.2d 10, 13 (documents kept in business file not made by that business entity are not a business record of the business to which the file belongs). But see *Birch v. Township of Drummer* (1985), 139 Ill. App. 3d 397, 407, 487 N.E.2d 798, 805-06 (survey of engineering firm commissioned by county admissible as a business record of the county).) These Illinois decisions are consistent with the better reasoned interpretations of Rule 803(b) of the Federal Rules of Evidence. (See *NLRB v. First Termite Control Co.* (9th Cir. 1981), 646 F.2d 424, 425-30; M. Graham, Federal Evidence sec. 803.6, at 852-56 (2d ed. 1986).) Therefore, the trial court did not err in excluding PX-2 from evidence. *Pell v. Victor J. Andrew High School* (1984), 123 Ill. App. 3d 423, 433, 462 N.E.2d 858, 866.

■ Absent introduction into evidence of the signatory authority, the record contains no evidence establishing the authority of IH to sign the notes on Leaders' behalf. IH admits that none of the notes was signed by any representative of Leaders; rather, each of the notes bears the typewritten name of Leaders in the signature area. Without evidence that IH was authorized to sign for Leaders, IHCC has not established that the notes constitute a security agreement because they are not signed by the debtor. See Ill. Rev. Stat. 1983, ch. 26, par. 9—203(a).

■ In its reply brief, IHCC raises an additional argument that

the parties' practice, in which Leaders would order equipment and IH would type Leaders' name on each note, constituted an authorization to sign Leaders name by course of business. Two problems exist with plaintiffs' argument. First, as IH conceded at oral argument, it did not raise this argument in its initial brief, but rather only raised it in its reply brief in response to the arguments contained in Helland's responsive brief. In addressing the requirements for an appellant's brief, Supreme Court Rule 341(e)(7) makes clear that an argument section shall contain all the contentions of the appellant and that "[p]oints not argued are waived and shall not be raised in the reply brief." (103 Ill. 2d R. 341(e)(7); *Interstate Bank v. Sluis* (1979), 79 Ill. App. 3d 1039, 1045, 398 N.E.2d 1015, 1019; *Department of Transportation v. Drobnick* (1977), 54 Ill. App. 3d 987, 993, 370 N.E.2d 242, 246.) Unlike *Rome v. Commonwealth Edison Co.* (1980), 81 Ill. App. 3d 776, 780, 401 N.E.2d 1032, 1034-35, where the court concluded a reply-brief argument raised in direct response to an appellee's argument was not waived, here IHCC's course-of-business argument does not respond to an argument of appellee. Instead, it is offered as an independent basis for IH's argument that it had authority to sign the notes on Leaders' behalf. We therefore find that the course-of-business argument is waived.

Even were it not waived, such an argument is unconvincing because the record citations offered by IHCC in support of the course of business argument do not support its contention. IHCC initially cites the testimony of Dale Ball, district manager of IHCC, concerning IH's routine business practice of obtaining a signatory authorization and then signing the dealers' name to wholesale notes. This testimony does not establish that a course of dealing existed between IHCC and Leaders sufficient to establish an implied principal-agent relationship for the purpose of authorizing IH to sign the notes on Leaders' behalf. IHCC then argues that "it is undisputed that Leaders was an IH dealer for seven years and throughout that period purchased new IH equipment pursuant to this procedure." In support of this statement, IHCC cites to the dealer agreement between IH and Leaders (PX-1), a request form for obtaining copies of financing statements, and a financing statement dated November 1, 1967, naming Leaders as the debtor and IH and IHCC as the secured parties. While the documents do provide evidence that the relationship between Leaders and IH extended at least seven years, they do not constitute evidence that Leaders acquiesced in a procedure whereby IH would sign notes on Leaders' behalf following each order of equipment on credit. IHCC's citation to one page in the record likewise does not support its con-

tention regarding the parties' custom of business. On that page, Dale Ball offers testimony regarding the dollar value and number of tractors which "were supposed" to be in Leaders' inventory in February 1983. The citation contains no evidence that Leaders ordered tractors from Harvester over the seven-year period pursuant to the procedure whereby IH would sign wholesale notes on Leaders' behalf. Therefore, IHCC has not established that the record contains evidence supporting a course of business between the parties from which the inference could be drawn that Leaders implicitly authorized IH to sign the notes.

Apart from the notes, IH argues that the IH-Leaders dealer agreement also operates as a security agreement. The difficulty with this argument is that IHCC has cited to no evidence in the record which authenticates the signature of Gerald A. Leader on the last page of the dealer agreement. While IHCC asserts that Dale Ball identified the signatures on the agreement, his testimony, in fact, only identified the signatures of the IHCC employees, Leo Holman and David P. Campbell. Regarding the Leaders' signature, Ball could only state that a signature which purported to be that of Gerald A. Leaders was on the document. Absent proof that the dealer agreement was signed by the debtor Leaders, the document did not constitute a security agreement. As the evidence also failed to establish a security agreement in the form of the notes containing Leaders' name typed in by IH representatives, the record contains insufficient proof of a security agreement between Leaders and IH, and, thus, Helland has established a superior right to possession of the property.

What remains to be resolved is the issue regarding the $142,230 in damages awarded to Helland. IHCC argues that the trial court erred in awarding Helland $142,230 in damages. Specifically, IHCC contends (1) the trial court did not apply the correct measure of damages and (2) the award is excessive, clearly disproportionate, and oppressive. We need not consider IHCC's second argument because we agree that the trial court erred in calculating Helland's damages.

In its letter opinion dated August 14, 1985, the trial court explained its damage award of $142,230:

> "In determining damages, i.e., the fair value of the use of the two tractors and disk during twenty-six months of wrongful detention, I have specifically rejected the suggestion that there must be proof of the time and use of the equipment. Loss of use means *not having*; there is no need to show actual use." (Emphasis added.)

As its opinion suggest, the trial court concluded Helland was entitled

to damages solely because he did not have possession of the two tractors and the disc. The court treated Helland's contemplated use of the equipment as irrelevant, instead presuming that he suffered loss once he lost possession.

■■ Section 19—123 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 19—123) provides that in a replevin action where the right of property is adjudged against the plaintiff, the defendant is entitled to damages in the amount of the use of the property from the time of its taking until its return. (*International Harvester Credit Corp. v. Helland* (1985), 130 Ill. App. 3d 836, 839-40, 474 N.E.2d 882, 885; *Roberts v. Perrine* (1928), 247 Ill. App. 259, 262.) The value of the use of the property is the true measure of damages, not the value of the property alone (*Butler v. Mehrling* (1854), 15 Ill. 488), and the value of the use of the property may in some cases exceed the value of the property itself (*National Contract Purchase Corp. v. McCormick* (1931), 264 Ill. App. 63, 69; 66 Am. Jr. 2d *Replevin* sec. 119 (1973)). The measure of damages for detention of another's property in a replevin suit where the property involved has a net rental value is the reasonable net rental value. (*Cottrell v. Gerson* (1938), 296 Ill. App. 412, 434, 16 N.E.2d 529, 538, *aff'd* (1939), 371 Ill. 174; see *Crosby v. City of Chicago* (1973), 11 Ill. App. 3d 625, 628, 298 N.E.2d 719, 721; *cf. Welch v. Brunswick Corp.* (1973), 10 Ill. App. 3d 693, 701-02, 294 N.E.2d 729, 735 (where trial court rejected net rental income as proper measure of damages and awarded plaintiff the amount the property had depreciated while unlawfully detained computed on a straight-line basis with a 15-year useful life).) In addition to the reasonable use of the property, the injured party is entitled to the depreciation in the value of the property while unlawfully detained. (*Culligan Rock River Water Conditioning Co. v. Gearhart* (1982), 111 Ill. App. 3d 254, 258-59, 443 N.E.2d 1065, 1068; *Larson v. Mobile Home Finance Co.* (1967), 83 Ill. App. 2d 210, 216-17, 226 N.E.2d 882, 885.) Damages awarded under the replevin act are intended to provide full indemnity for damages suffered. *Puritan Finance Corp. v. Gumdrops, Inc.* (1981), 101 Ill. App. 3d 888, 892, 428 N.E.2d 950, 953; *Cottrell v. Gerson* (1938), 296 Ill. App. 412, 433, 16 N.E.2d 529, 538.

Neither party has cited and our research has not disclosed any Illinois decision adopting the definition of loss of use employed by the trial court here. Most Illinois cases which have awarded damages for unlawfully detained property have assumed the party's use of the property had the property not been unlawfully taken. For example, in *Culligan Rock River Water Conditioning Co. v. Gearhart* (1982), 111

Ill. App. 3d 254, 259, 443 N.E.2d 1065, 1068, the lessee retained a water softener without paying rent. The court heard testimony as to the reasonable rental value of the water softener and awarded damages on the apparent assumption that the company would have sought out and located an alternative lessee but for the unlawful retention of the softener. Likewise, in *Cottrell v. Gerson* (1938), 296 Ill. App. 412, 434-35, 16 N.E.2d 529, 538, *aff'd* (1939), 371 Ill. 174, 182, 20 N.E.2d 74, 79, the court awarded damages to the lessee, a barber, for the lessor's unlawful detention of the fixtures and equipment in the barber shop. Apparently, the *Cottrell* court assumed that the barber would have used the equipment at another location had he had possession of the barber shop furniture and fixtures. In *Larson v. Mobile Home Finance Co.* (1967), 83 Ill. App. 2d 210, 226 N.E.2d 882, the court awarded the plaintiffs damages for the loss of use of their home trailer in an amount equal to the cost of locating substitute living quarters during the period from the wrongful detention until the trailer was returned. As the plaintiffs were living in the trailer prior to the unlawful taking of their property, the court presumed that the trailer would have been used as it had been while in the plaintiffs' possession.

While we found no case expressly holding that the wronged party need establish the manner in which he would have used the property and a value for the loss of use based upon market conditions at that time, at least one case inferentially supports that position. In *National Contract Purchase Corp. v. McCormick* (1931), 264 Ill. App. 63, National obtained possession of an automobile by writ of replevin from the defendant, McCormick, a traveling salesman. The trial court ordered National to pay the salesman $6,120. In calculating the damages, the court based its estimate of the fair and reasonable rental value of the car upon the salesman's use of the car "for a period of time prior to its taking." With this information, the court calculated that the salesman would have averaged 90 miles a day in his car. Since he had been deprived of the use of his car for 425 days, the court calculated he would have driven 38,250 miles at 16 cents per mile. On appeal, the appellate court reduced the amount awarded per mile and deducted from the award the cost of operating the rental car including gas, oil, depreciation, and insurance. 264 Ill. App. 63, 70.

The calculation of damages in *National Contract* is inconsistent with the trial court's statement that "loss of use means not having." In *National Contract*, the trial court based the salesman's damages on the miles he had driven in a previous period. Were loss of possession the only criterion for damages, then presumably the court would

not have needed to have considered the salesman's previous usage of the car and could have determined a rental amount based solely on the time the salesman was without his car. Moreover, the court in *National Contract* deducted certain costs of operation which also were based upon the mileage estimated to be driven by the salesman over the period he was deprived of the use of his automobile. While the salesman's failure to rent a substitute automobile was deemed by the court to be irrelevant in the damages calculation, it did base the damages upon the salesman's estimated usage and did not award damages, as did the trial court here, merely because the salesman was without possession of the automobile.

■ At the hearing on damages, Helland argued strenuously that he need not have rented comparable equipment to be entitled to damages. The rule in Illinois, as articulated in *National Contract*, supports Helland's position. Acknowledgement of this rule, however, does not release a party seeking damages in a replevin action from demonstrating how he would have used the property and, if the intended use involved a rental to others, the likelihood that he could have rented the property during that time period. For example, a party who intended to keep the property, such as an ordinary car or tractor, in a garage should not be entitled to recover damages for its rental value merely because the property was absent from his garage. Furthermore, a party who intended to rent the property at the time when no market existed for such rented property should not be entitled to recover damages. Moreover, a party should not be entitled to recover full rental value for the loss of use of certain property when the injured party had other property in his stock which was not available for rent to the public and which could have performed the same function. (See D. Dobbs, *Remedies* sec. 5.11, at 389-90 (1973).) While an abstract argument can be made that a party should be compensated for the loss of the right to use property whether or not the owner would have exercised the right, this argument "seems to depend very much upon abstract conceptions of 'value,' that do not seem to represent any real life element such as inconvenience. An owner who is not going to use a vessel is not deprived of its 'value,' in real life, except, perhaps, its value to him as an object of contemplation." D. Dobbs, *Remedies* sec. 5.11, at 389 (1973).

■ After consideration of the case law in Illinois awarding damages in replevin actions, we conclude the trial court adopted the incorrect criterion for measuring damages in this replevin action. Instead of allowing a party who has been without his property to recover damages for loss of its possession without regard to whether the

property would in fact have been used—as the court did here—the better rule is to require the injured party to establish by competent evidence the use to which the property would have been put had it remained in his possession. In the case at bar, for example, if Helland predicates his claim for damages on the assumption that he would have rented the equipment he must introduce testimony concerning the period of time he would have sought to rent the equipment and testimony that a rental market for the equipment existed during the period of the detention. Helland correctly argues that he need not have rented a substitute tractor and discs to warrant recovery for loss of use. Alternative, if Helland predicates his claim for damages on his anticipated use of the equipment in his own farming operations, he must demonstrate the time periods during which he would have used the replevied property and must establish that he was unable to perform the work with equipment which he already had on his land during the relevant period. We reject the proposition that Helland was entitled to substantial damages merely because he lost the enjoyment of having the tractors and disc in his possession especially where, as here, IHCC obtained possession of the property under court authority.

The record developed at the hearing on damages does not contain such evidence. Helland offered no specific testimony regarding the anticipated use of the equipment. On cross-examination, he testified there was a possibility that he would use the tractors and the disc himself and acknowledged he could either use the equipment or sell it. Helland did not testify that he was considering renting the equipment. In his deposition testimony read at the damages hearing, Helland testified that he intended to retain the tractors and disc for his own use.

While the court's damage award is structured as a constant monthly amount for 26 months, the record contained evidence that Helland as a grain farmer would only use a tractor an average of six months of the year and a disc only four months of the year. While Helland's witness offered testimony regarding a monthly rental value for the tractors, no testimony was offered regarding the monthly rental value of the disc. Instead, Helland's witness only testified that the disc's rental value would be similar to that of a plow because a disc is "kind of similar to a plow."

Helland offered no testimony regarding what his specific needs for the tractors and disc would have been in his own farming operations over the relevant time period that IHCC had possession of the property. Helland admitted that in 1983, he put 1,500 of his 2,000

acres into the PIK program, which would have greatly diminished the need to use farm equipment on his property. Moreover, Helland testified in his deposition, which was read at the hearing on damages, that he had seven or eight tractors that he used for his own farming. Also, Helland admitted that as a dealer in new and used farm equipment, he always had some tractors and discs in stock.

As this review of the evidence establishes, the trial court's award of $142,230 predicated on a constant monthly amount for 26 months is against the manifest weight of the evidence. Since we reject the trial court's theory that Helland was entitled to damages merely for his loss of possession of the equipment without regard to use and because the evidence adduced is insufficient to support the damage award on the basis of Helland's loss of use of the equipment, we reverse the judgment of the circuit court of Kendall County and remand this cause for a new trial on damages.

Affirmed in part, reversed in part and remanded.

HOPF and UNVERZAGT, JJ., concur.