2020 IL App (1st) 190002-U

No. 1-19-0002

Order filed September 30, 2020

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| MIDLAND FUNDING, LLC, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 m1 111381 |
| | ) | |
| ALI CHARFI, | ) | Honorable |
| | ) | Yvonne Coleman, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HALL delivered the judgment of the court.
Presiding Justice Gordon and Justice Lampkin concurred in the judgment.

**ORDER**

¶ 1     *Held*:   We affirmed the admissibility of plaintiff's exhibit as a business record and found that plaintiff had standing to sue defendant as a debt purchaser where it established that it was the bona fide owner of the debt and the chain of title for the debt.

¶ 2     Plaintiff Midland Funding, LLC, a debt buyer, filed suit against defendant Ali Charfi to collect a delinquent credit card debt. On appeal, defendant contends that: 1) plaintiff did not lay a foundation for its Exhibit 2 that would qualify for the "business record" exception to the hearsay rule, and 2) plaintiff's Exhibit 2 standing alone without explanatory evidence did not prove

plaintiff's title to defendant's account and accordingly, its standing to sue him.  For the following reasons, we affirm.

¶ 3                                   BACKGROUND

¶ 4     In 2014, defendant received a line of credit from Synchrony Bank. In July 2016, Synchrony Bank charged off defendant's account for his failure to pay an outstanding balance of $5278.91. On August 24, 2016, Synchrony Bank sold defendant's account to plaintiff. On August 26, a bill of sale was issued between Synchrony Bank and plaintiff and evidencing the transaction.

¶ 5     In May 2017, plaintiff filed a complaint in the circuit court of Cook County to collect defendant's outstanding debt. At trial, defendant testified that he opened a credit card with Synchrony Bank, received statements in the mail, ceased making payments, and owed money on the account. Additionally, defendant confirmed that plaintiff's Exhibit 1 consisted of billing statements from his account.

¶ 6     Plaintiff called Paula Fruth to testify as a custodian of records. Ms. Fruth worked as a senior legal consultant for Midland Credit Management, a sister-company of plaintiff, which provided management services to plaintiff after it purchased debt. Fruth's testimony was to establish the foundation for plaintiff's exhibits as business records that would exempt them from the rule against hearsay. Defendant repeatedly objected to Fruth's testimony concerning Exhibit 2. Defendant argued that Fruth had no personal knowledge that would allow her to testify about the creation of Exhibit 2 as she was neither an employee of plaintiff nor Synchrony Bank.

¶ 7     Regarding Exhibit 2, the circuit court made the following findings:

"Defendant moves to strike the testimony offered to explain the meaning of Exhibit 2 on the ground that the document speaks for itself.  The Court agrees that any witness

testimony offered to explain the meaning of Exhibit 2 is inadmissible and, therefore, is stricken. Defendant further objects to the admissibility of Exhibit 2 on the ground the witness does not have personal knowledge regarding the transaction. Although the document is apparently written on Synchrony Bank letterhead and bears the sole signature of a Synchrony representative, the Bill of Sale is an agreement between [Midland] and Synchrony Bank. The witness testified that Exhibit 2 is made and kept in the regular course of [Midland's] business and that it is the regular practice of [Midland] to maintain these records. [Midland] laid a proper foundation pursuant to Illinois Supreme Court Rule 236 and therefore, Exhibit 2 is admissible."

¶ 8 The circuit court subsequently entered judgment against defendant in the amount of $5278.91 plus costs on December 7, 2018. This timely appeal followed.

¶ 9 ANALYSIS

¶ 10 On appeal, defendant contends that: 1) plaintiff did not lay a foundation for its Exhibit 2 that would qualify for the "business record" exception to the hearsay rule, and 2) plaintiff's Exhibit 2 standing alone without explanatory evidence did not prove plaintiff's title to defendant's account and accordingly, its standing to sue him.

¶ 11 A. Business Exception to Hearsay

¶ 12 Defendant first contends that the circuit court abused its discretion in finding that plaintiff laid a proper foundation for Exhibit 2 to be admitted into evidence under the business records exception to the hearsay rule. Defendant argues that plaintiff's only evidence was documents it bought from a third party, Synchrony Bank, which were out-of-court statements, and accordingly, hearsay. Defendant further argues that it was error for Exhibit 2 to be exempted from the hearsay

rule because Fruth was unable to testify from personal knowledge that the documents were records of regular activity timely kept in the regular course of business as required under the Illinois evidentiary rules. He maintains that Fruth's testimony did not meet those requirements because she never worked for Synchrony Bank, but only for plaintiff.

¶ 13 The determination of whether business records are admissible is within the sound discretion of the circuit court, and its decision will not be reversed absent an abuse of discretion. *JPMorgan Chase Bank, N.A. v. East-West Logistics, L.L.C.*, 2014 IL App (1st) 121111, ¶ 81. An abuse of discretion occurs only where the court's ruling is arbitrary, fanciful, or unreasonable, or where no reasonable person would take the view adopted by the circuit court. *Id.* A reviewing court may sustain an evidentiary ruling by the circuit court for any appropriate reason, regardless of whether the trial court relied on that reason or whether the trial court's reasoning was correct. *Kimble v. Earle M. Jorgenson Co.*, 358 Ill. App. 3d 400, 408 (2005).

¶ 14 The theory upon which entries made in the regular course of business are admissible as an exception to the hearsay rule is that " 'since their purpose is to aid in the proper transaction of the business and they are useless for that purpose unless accurate, the motive for following a routine of accuracy is great and the motive to falsify nonexistent.' " *Kimble*, 358 Ill. App. 3d at 414, (quoting M. Graham, Cleary & Graham's Handbook of Illinois Evidence, §803.10, at 817 (7th Ed.1999)). Thus, it makes no difference whether the records are those of a party or of a third person authorized to generate the record on the business's behalf. *Kimble*, 358 Ill. App. 3d at 414.

¶ 15 Supreme Court Rule 236 codifies the business record exception to the hearsay rule. It states, in pertinent part:

"Any writing or record, whether in the form of any entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of the act, transaction, occurrence, or event, if made in the regular course of any business, and if it was the regular course of the business to make such a memorandum or record at the time of such act, transaction, occurrence, or event or within a reasonable time thereafter. All other circumstances of the making of the writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but shall not affect its admissibility." Ill. S. Ct. R. 236(a) (eff. Aug. 1, 1992).

¶ 16 Because the accuracy of the record is presumed, Rule 236 requires only that the party tendering the record satisfy the foundational requirements that (1) the record was made in the regular course of business and (2) at or near the time of the event or occurrence. *Kimble*, 358 Ill. App. 3d at 414. A sufficient foundation for admitting records may be established through testimony of the custodian of records or another person familiar with the business and its mode of operation. *Id.* Moreover, while the lack of personal knowledge by the maker of the record may affect the weight of the evidence, it does not affect its admissibility. *Id.* at 415. Once a witness has established the foundational requirements of a business record, the record itself should be introduced. *Troyan v. Reyes*, 367 Ill. App. 3d 729, 733 (2006). Business records should only be barred from admission if they are irrelevant, prejudicial or for some other legal appropriate reason. *Id.*

¶ 17 In this case, Fruth testified that she was a custodian of records for plaintiff, and that she regularly reviewed accounts purchased by plaintiff to verify the accuracy of those purchased

accounts. Fruth also testified that she had access to plaintiff's records, was familiar with the business and its mode of operation. Additionally, she testified that Exhibit 2 was made in the ordinary course of plaintiff's business and at or near the time of the transaction. She further testified that it was plaintiff's regular practice to maintain such records.

¶ 18    Defendant's contention that Fruth's testimony failed to lay a foundation because Exhibit 2 was a document created by a third party fails because business records are presumed inherently reliable and it does not matter if a third party created them.  See *Kimble*, 358 Ill. App. 3d at 414. Additionally, whether Fruth had personal knowledge of the information contained in the record only affects its weight, not its admissibility. *Id.* at 415.

¶ 19    Nor do we find persuasive defendant's argument that Exhibit 2 contained retained third-party documents and could not be considered business records. *International Harvester Credit Corp. v. Helland*, 151 Ill. App. 3d 848 (1986), on which defendant relies, is inapposite.

¶ 20    In that case, corporate officers of a non-party held a special meeting to authorize certain employees of International Harvester the ability to execute promissory notes. *Id*. at 854. No International Harvester employees were present at the meeting. The circuit court barred the officers' minutes from evidence. *Id*. The *Helland* court affirmed. *Id*. The third-party minutes of the non-party were not the business records of International Harvester, even though they had been retained in its files. *Id.*

¶ 21    The present case is distinguishable. In this case, Exhibit 2 consisted of documents that evidenced a contract between two companies, Synchrony Bank, and plaintiff. Indeed, the circuit court found that "[a]though the document is apparently written on Synchrony Bank letterhead and bears the sole signature of a Synchrony representative, the Bill of Sale is an agreement between

[Midland] and Synchrony Bank." As an agreement between both parties, Exhibit 2 equally belongs to plaintiff and Synchrony Bank as a record of its transaction.

¶ 22    We find that the circuit court's conclusion that plaintiff laid a proper foundation pursuant to Rule 236 with Fruth's testimony and the admission of Exhibit 2 into evidence was not an abuse of discretion.

¶ 23                                    B.  Standing to Sue

¶ 24    Defendant next contends that plaintiff's documents that were admitted into evidence failed to establish that it had title to defendant's account and thus, plaintiff lacked standing to bring suit. He argues that no link can be shown between "whatever it was that plaintiff claims to have purchased" and his account. This argument is without merit.

¶ 25    Standing is the requirement that a lawsuit cannot commence unless a plaintiff has some injury in fact to a legally recognized interest. *Unifund CCR Partners v. Shah*, 407 Ill. App. 3d 737, 740 (2011). The purpose of the doctrine of standing is to ensure that courts are deciding actual controversies, and not some abstract questions or moot issues. *Id.* The primary focus of standing is that a party have a real interest in the action and its outcome. *Id.* In deciding whether a party has standing, a court must look at the party to see if he or she will be benefitted by the relief granted. *Id.*

¶ 26    A plaintiff need not allege facts establishing standing. *Knott v. Woodstock Farm & Fleet, Inc.*, 2017 IL App (2d) 160329, ¶ 33. Rather, lack of standing is an affirmative defense, and the burden of pleading and proving the defense is on the party asserting it. *Id.*

¶ 27    Section 2-403 in the Code of Civil Procedure (Code) (735 ILCS 5/1-101 *et seq.* (West 2018)), which governs who may be plaintiff in the case of assignments and subrogation, provides that:

> "an assignee and owner of a non-negotiable chose in action may sue thereon in his or her own name.  Such a person shall in his or her pleading under oath alleges that he or she is the actual bona fide owner thereof, and set forth how and when he or she acquired title."  735 ILCS 5/2-403 (West 2018).

A "chose in action" is a "proprietary right in *personam*, such as a debt owed by another person, a share in a joint-stock company, or a claim for damages in tort."  *Unifund CCR Partners*, 407 Ill. App. 3d at 741, (quoting Black's Law Dictionary 234 (7th ed.1999)).  The plaintiff must detail how it came to own its legal interest in the debt by tracing the chain of title back to its origin with the creditor.  *Unifund CCR Partners v. Shah*, 2013 IL App (1st) 113658, ¶ 11.  In order to state a cause of action, a debt buyer need only comply with the standing requirements of section 2-403(a).  *Id.*  at ¶ 14.

¶ 28    Whether plaintiff had standing is a question of law and subject to *de novo* review.  *In re County Treasurer*, 2013 IL App (3d) 120999, ¶ 16; *Powell v. Dean Foods Co.*, 2012 IL 111714, ¶ 35.

¶ 29    We find that plaintiff conclusively proved its ownership of defendant's delinquent credit account with Synchrony Bank in accordance with the requirements of section 2-403.  First, plaintiff showed that it was the bona fide owner of the debt and second, that it purchased the debt from Synchrony Bank.

¶ 30    A review of the record reveals that when plaintiff filed its complaint, it attached the affidavit of Kristi Lanque, a legal specialist employed by plaintiff, to support the allegations contained in the complaint.  Lanque's affidavit indicated that she had access to pertinent account records for plaintiff, and that her statements were based on personal knowledge of accounts maintained on plaintiff's behalf.  Lanque averred that plaintiff was the current owner or, and/or successor to, the obligation sued upon and was assigned the rights, title, and interest to Synchrony Bank's account with defendant, which reflected a balance of $5278.91 as of March 8, 2017.  Thus, plaintiff filed a verified complaint. Additionally, plaintiff also attached a copy of a statement of defendant's account with Synchrony Bank reflecting a balance of $5278.91 to the account.

¶ 31    At trial, plaintiff introduced evidence in the form of Exhibits 1  and 2 to further support its claims of ownership and to establish the chain of title.  Exhibit 1 consisted of Symphony Bank credit card statements with defendant's name,  address and account number. Exhibit 2 consisted of the Bill of Sale of plaintiff's purchase of defendant's debt from Synchrony Bank, also including defendant's name, address, and account number, among other things.  Plaintiff also presented Fruth's testimony, which established that the Exhibit 2 was a business record kept in the normal course of plaintiff's business as a debt buyer, and we have already determined that Exhibit 2 was properly admitted as a business record.

¶ 32    Additional evidence presented at trial consisted of defendant's own testimony that he had a credit account with Synchrony Bank and that he stopped paying the amounts due on the account, and that Exhibit 1 was a statement from his account.

¶ 33    We find that defendant's conclusory argument fails to support his burden of proving plaintiff's lack of standing.  To the contrary, the verified complaint, exhibits and testimony at trial

overwhelmingly establish that plaintiff had standing as a debt purchaser to sue defendant to collect the delinquent debt.

¶ 34                                                      CONCLUSION

¶ 35      For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 36      Affirmed.