# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*Unifund CCR Partners v. Shah*, 2013 IL App (1st) 113658

| | |
|---|---|
| Appellate Court Caption | UNIFUND CCR PARTNERS, Plaintiff-Appellant, v. MOHAMMAD SHAH, Defendant-Appellee. |
| District & No. | First District, Second Division<br>Docket No. 1-11-3658 |
| Filed | June 18, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Plaintiff's complaint to collect an assigned credit card debt owed by defendant was properly dismissed on the ground that plaintiff failed to show that the multiple assignments, especially the assignment to plaintiff and the assignment to plaintiff's assignor, satisfied the requirements of section 8b of the Collection Agency Act, including the requirements that the consideration terms and account information be shown, since plaintiff failed to include the necessary information in its filing, and in the absence of a record containing the information, the appellate court assumed the trial court acted correctly. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 08-M1-162091; the Hon. Dennis M. McGuire, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Joseph P. Kincaid, Catherine Basque Weiler, and Amy Z. Knapp, all of Swanson Martin & Bell, LLP, of Chicago, for appellant.<br><br>Daniel A. Edelman, Cathleen M. Combs, James O. Latturner, and Tiffany N. Hardy, all of Edelman Combs Latturner & Goodwin, LLC, of Chicago, for appellee. |

Stacie E. Barhorst, of Kaplan Papadakis & Gournis, P.C., of Chicago, for *amicus curiae* Illinois Creditors Bar Association.

Joseph S. Messer and Nicole M. Strickler, both of Messer & Stilp, Ltd., of Chicago, for *amicus curiae* ACA International.

Michael L. Starzec, of Wheeling, and Christopher R. DiPlacido, of Deerfield, for *amicus curiae* National Association of Retail Collection Attorneys.

David J. Phillips and Mary E. Phillips, both of Phillips & Phillips, Ltd., of Palos Hills, for *amicus curiae* NCLC and NACA.

Julie Nepevu, of AARP Foundation Litigation, of Washington, D.C., for *amicus curiae* AARP.

Panel        JUSTICE CONNORS delivered the judgment of the court, with opinion.
Justices Quinn and Simon concurred in the judgment and opinion.

## OPINION

¶ 1      This appeal is the sequel to *Unifund CCR Partners v. Shah*, 407 Ill. App. 3d 737 (2010) (*Shah I*) , which answered two certified questions regarding the contents of assignments for collection under section 8b of the Collection Agency Act (225 ILCS 425/8b (West 2008)). After the parties returned to the circuit court, plaintiff filed an amended complaint, which the circuit court then dismissed on defendant's motion. Plaintiff has appealed from that judgment, and we are now confronted with a question of first impression that we touched on only in passing in *Shah I*: do section 8b's requirements apply to all assignments in the chain of title for a debt, or do they apply only to assignments for collection? We decide that it is the latter.

¶ 2      This case comes to us following a motion to dismiss, so we take all well-pleaded facts from the complaint as true. See *Callaghan v. Village of Clarendon Hills*, 401 Ill. App. 3d 287, 300 (2010). Defendant Mohammad Shah held a credit card issued by Citibank (South Dakota) N.A., on which he accumulated a balance of about $16,000 and then defaulted. After the default, Citibank transferred defendant's account to Unifund Portfolio A, LLC,

which in turn transferred the account to Cliffs Portfolio Acquisition I, LLC. Cliffs then transferred legal title in the account to Palisades Collection, LLC, which in turn transferred its interest in the account to Unifund CCR Partners, which is the plaintiff in this case. The whole series of transactions was made possible by a number of complicated interlocking agreements and is explained in further detail in *Shah I*, 407 Ill. App. 3d at 738-40. Plaintiff then brought the instant suit to collect on the debt.

¶ 3 In *Shah I*, we answered two certified questions posed by the circuit court. First, we determined that section 2-403 of the Code of Civil Procedure (735 ILCS 5/2-403 (West 2008)) authorizes an assignee for collection to file suit in its own name in order to collect a debt. See *id.* at 740-42. Second, we were asked to interpret the requirements of section 8b of the Collection Agency Act (225 ILCS 425/8b (West 2008)). Section 8b allows legal title to a debt to be assigned to a collection agency in order for the agency to collect the debt. See 225 ILCS 425/8b (West 2008). We held that

"a collection agency can establish an assignment of accounts receivable for collection purposes through documents attached as exhibits to the plaintiff's complaint where the identification of the accounts transferred, the consideration paid, and the effective date of the transfer of particular accounts are in multiple incorporated documents. However, such documents must be in the form of contracts of assignment or documents that are incorporated by reference into those contracts, rather than in the form of an affidavit." *Shah I*, 407 Ill. App. 3d at 747.

¶ 4 Following our decision in *Shah I*, plaintiff filed a new, verified complaint that alleged the chain of title for the debt in detail, and it supported the complaint with a number of documents that included the contracts of assignment and related documents for the last two transactions in the chain. Plaintiff, however, was either unable or unwilling to disclose the consideration for the first two transactions. The circuit court held that this was insufficient under section 8b of the Collection Agency Act (225 ILCS 425/8b (West 2008)) and dismissed the complaint with prejudice. Plaintiff appealed.

¶ 5 As we explained in *Shah I*, debts like the one in this case are a type of intangible personal property known as a chose in action, which is not only assignable but is traditionally understood as having bifurcated title: legal title and equitable title. See *Shah I*, 407 Ill. App. 3d at 741-42. A creditor generally has three options when it comes to collecting on a debt. First, the creditor may try to collect the debt itself by bringing an action in its own name against the debtor. Alternatively, the creditor may hire a third party, known as a collection agent, to pursue the lawsuit against the debtor. In this situation, the creditor assigns legal title in the debt to the collection agent but retains equitable title for itself. This type of partial assignment is known as an assignment for collection. Finally, the creditor may decide to sell off its entire interest in the account to a third party, commonly known as a debt buyer. By doing so, the creditor divests itself of both legal and equitable title and retains no ownership interest in the debt. See *id.*; see also generally *Sprint Communications Co. v. APCC Services, Inc.*, 554 U.S. 269 (2008) (explaining the history of assignments for collection and the legal/equitable title dichotomy).

¶ 6 In this case, Unifund Portfolio A and Cliffs are both considered debt buyers because they received both legal and equitable title. In contrast, Palisades and plaintiff both

received only legal title via assignments for collection. As it stands now, Cliffs holds equitable title to defendant's debt while plaintiff holds legal title. Thus, plaintiff has the right to sue defendant to collect on the debt, but Cliffs has the right to any proceeds recovered by plaintiff from defendant.

¶ 7    Debt collection is, however, a heavily regulated industry in Illinois, and any party attempting to collect a debt must comply with stringent consumer-protection standards. As we mentioned in *Shah I*, section 8b of the Collection Agency Act (225 ILCS 425/8b (West 2008)) mandates that an assignee for collection establish that it holds legal title to a debt by pleading that it received title via a written agreement that identifies "the accounts transferred, the consideration paid, and the effective date of the transfer." *Shah I*, 407 Ill. App. 3d at 747.

¶ 8    Applying section 8b to this case would be simple if plaintiff were merely the assignee for collection of the original creditor, Citibank. But plaintiff is not. What makes this case challenging is that ownership of defendant's debt has changed hands four times as it passed from the original creditor to plaintiff, and only two of those transfers were assignments for collection. On appeal, plaintiff's primary contention is that section 8b only obligates it to provide the required documentation for the transaction by which it received legal title, that is, the last transfer in the chain. Plaintiff argues that it is not required under section 8b to produce any of the documentation related to the other three transactions in the chain of title in order to establish plaintiff's own claim to the debt.

¶ 9    Given the complexity of the chain of title to the debt in this case, it is helpful to consider the pleading requirements for each link in the chain piece by piece. First, consider a situation where a creditor hires a collection agency to collect on a debt. In that case, the creditor assigns legal title for the debt to the agency, and the agency files a lawsuit against the debtor in order to collect the debt:



In this situation, there are two statutory pleading requirements. The first is found in section 2-403(a) of the Code of Civil Procedure (735 ILCS 5/2-403(a) (West 2008)), which grants an assignee standing to sue to collect a debt in its own name so long as the assignee's complaint "on oath allege[s] that he or she is the actual bona fide owner thereof, and set[s] forth how and when he or she acquired title." In order to comply with section 2-403(a), the collection agency would merely file a verified complaint (or an affidavit attached to the complaint) that alleges the required facts.

¶ 10    Because this transaction is an assignment for collection, however, the agency must also comply with section 8b of the Collection Agency Act. Under section 8b(e), "[n]o litigation shall commence in the name of the licensee as plaintiff unless: (i) there is an assignment of

the account that satisfies the requirements of this Section and (ii) the licensee is represented by a licensed attorney at law." 225 ILCS 425/8b(e) (West 2008). Therefore, in addition to the allegations regarding how and when the agency acquired title to the debt that are required under section 2-403(a) of the Code of Civil Procedure (735 ILCS 5/2-403 (West 2008)), the agency must also plead that there was a valid assignment for collection by including the three factual allegations regarding the assignment pursuant to section 8b of the Collection Agency Act (225 ILCS 425/8b (West 2008)) that we identified in *Shah I*.[1]

¶ 11    But what about a situation where the creditor assigns legal title in a debt to one collection agency and then that collection agency in turn assigns its interest in the debt to another collection agency? There is now an extra entity in the chain of title:



Even so, the second agency does not have standing to pursue the debt under section 2-403 of the Code of Civil Procedure (735 ILCS 5/2-403 (West 2008)) unless it explains the entire chain of title for the debt in its complaint. Section 2-403 requires a plaintiff to detail how it came to own its legal interest in the debt that the debtor owes to the creditor, and such an explanation would be materially incomplete if the plaintiff did not trace the chain of title back to its origin with the creditor. The debtor (and more importantly, the court) would have no way of knowing whether the plaintiff actually had legal standing to collect on the debt if the plaintiff were permitted to state only that it acquired its interest in the debt from another collection agency but was not required to explain how and when that collection agency in turn acquired legal title to the debt from the creditor.

¶ 12    The more interesting question is whether a plaintiff in this situation is also required to adhere to the requirements of section 8b. It is clear from the plain language of the statute that a plaintiff must satisfy section 8b's requirements for the first assignment for collection in the chain of title, that is, the assignment of legal title from the creditor to the first collection agency. But section 8b refers only to "the assignment" in the singular rather than referring to multiple assignments, the implication being that section 8b applies *only* to the initial assignment for collection in the chain of title. Although the plain language of a statute is often the best indication of legislative intent (see *Business Service Bureau, Inc. v. Webster*, 298 Ill. App. 3d 257, 259 (1998)), our overall goal in statutory interpretation is to give effect to the intent of the legislature and we "need not accept the literal meaning of a

---

[1]*Amicus* National Association of Retail Collection Attorneys (NARCA) raised an interesting point in its brief regarding whether section 8b requires the actual documents manifesting the assignment to be attached to the complaint, or whether the section is satisfied if the complaint merely alleges that the written documents exist and identifies each of the required elements. We need not resolve that question in this case, however, given that plaintiff has not included the requisite factual allegations in the body of its complaint but instead merely refers to documents attached as exhibits to the complaint.

statute if it would produce an absurd result" (*Shah I*, 407 Ill. App. 3d at 743). The entire point of section 8b is to ensure that " 'the terms of the assignment be open and precise to protect the consumer from repetitive litigation and debt collection abuse.' " *Id.* at 744 (quoting *Webster*, 298 Ill. App. 3d at 260). If the legislature thought that the stringent protections of section 8b were necessary to guard against debt-collection abuse in situations where legal title has been assigned only once, then we cannot believe that the legislature did not intend for those same requirements to apply in situations where legal title has been assigned multiple times to different collection agencies. Even more so than for a single assignment, such a situation is ripe for abuse and repetitive litigation against a debtor by multiple collection agencies that each claim to hold legal title to the debt. Only when the plaintiff complies with section 8b for each of the assignments of legal title in the chain can the debtor (and in turn, the court) be certain that the plaintiff currently holds legal title to the debt and is therefore the proper plaintiff for the case.

¶ 13    But now consider a different situation. Assume that instead of hiring a collection agency to pursue the debt, the original creditor simply sells its entire interest in the debt to a debt buyer:



The buyer now holds both legal and equitable title to the debt and the creditor has relinquished all ownership claims. If the buyer then files suit against the debtor, what must it plead regarding chain of title?

¶ 14    It is clear (and the parties agree) that in this situation the standing requirements of section 2-403(a) of the Code of Civil Procedure (735 ILCS 5/2-403(a) (West 2008)) once again apply. What is not so clear is whether section 8b of the Collection Agency Act (225 ILCS 425/8b (West 2008)) does as well. Plaintiff points out that section 8b is titled "Assignment for collection," and refers only to an account that is "assigned *to a collection agency* for collection with title passing *to the collection agency to enable collection* of the account in the agency's name as assignee for the creditor." (Emphases added.) 225 ILCS 425/8b (West 2008). This is a textbook definition of an assignment for collection, which is a specific legal concept that refers to the transfer of only legal title for the sole purpose of collecting a debt on behalf of the creditor. Importantly, assignment for collection is distinct from a sale, which refers to the transfer of *both* legal and equitable title. See generally *Sprint*, 554 U.S. at 275-80 (historical overview of the evolution of the assignability of choses in action). By referring specifically to assignments for collection, the plain language of section 8b indicates that the legislature intended to exclude sales of an account

to a debt buyer from the section's reach.[2] Thus, in order to state a cause of action in this situation a debt buyer, unlike an assignee for collection, need only comply with the standing requirements of section 2-403(a).

¶ 15 And what about a more complex situation where a creditor sells an account to a debt buyer, which then hires a collection agency to pursue the debt?



This is merely a combination of the first two scenarios. As the plaintiff, the collection agency must establish its standing under section 2-403(a) by explaining the entire chain of title, but it must also plead the additional information required by section 8b regarding the transaction between itself and the debt buyer in order to establish that a valid assignment for collection occurred.

¶ 16 With this framework in mind, it is now relatively easy to understand what plaintiff is required to plead in this case. Although lengthy, the series of transfers in this case is only a logical extension of the last scenario:



By referring to each entity in the chain of title by its role in the transactions, the pleading requirements for each step in the chain become clear:



---

[2]Indeed, the legislature recently amended the Collection Agency Act to explicitly exempt assignments to debt buyers from section 8b's requirements. See Pub. Act 97-1070 (eff. Jan. 1, 2013) (amending 225 ILCS 425/2, 8.5, 8.6 (West 2010)). The amendments did not take effect until January of this year, however, so they have no effect on the requirements that were in effect at the time this case was filed.

Under section 2-403, plaintiff must explain the entire chain of title in order to establish its standing to sue on the debt. As is mandated by the statute, plaintiff can do this by filing either a verified complaint or an affidavit that explains how and when each entity in the chain acquired title. Additionally, because plaintiff holds only legal title to the debt, plaintiff must demonstrate that the assignments for collection in the chain of title are valid by complying with section 8b. In this case, Cliffs holds equitable title to defendant's debt, so plaintiff must provide the section 8b information for both the Cliffs-to-Palisades assignment and the Palisades-to-plaintiff assignment. But because section 8b does not apply to sales to debt buyers, plaintiff is not required to provide similar information for the Citibank-to-Portfolio A transaction or the Portfolio A-to-Cliffs transaction.

¶ 17    With all of that said, we can now examine the actual pleadings in this case. In its fourth amended verified complaint, plaintiff alleged that Citibank sold both its legal and equitable interests in defendant's account to Unifund Portfolio A on October 3, 2006, via a bill of sale that plaintiff attached to the complaint. Unifund Portfolio A immediately sold its interests in the account to Cliffs at 12:01 a.m. that same day. Under a preexisting "forward-flow" agreement that had been in effect since May 28, 2003, Cliffs then automatically assigned its legal interest in the account to Palisades, which interest was then in turn automatically assigned to plaintiff under another forward-flow "master servicing agreement" between Palisades and plaintiff that had been in effect as amended since June 6, 2003. Although the series of transactions was complex, these verified allegations clearly establish how and when title to defendant's debt passed between each entity in the chain, and the allegations clearly explain which parties currently have an ownership interest (whether legal or equitable) in defendant's debt. The complaint is therefore sufficient to establish plaintiff's standing under section 2-403.

¶ 18    The next question is whether the complaint's allegations regarding the last two transactions in the chain are sufficient under section 8b. An assignee for collection must satisfy three requirements in order to plead a valid assignment for collection. The plaintiff must plead that the document manifesting the assignment identifies (1) the accounts transferred, (2) the consideration paid, and (3) the effective date of the transfer. See *Shah I*, 407 Ill. App. 3d at 747. In this case the third element is easily satisfied. Plaintiff attached to the complaint the agreement that controlled the assignment of legal title for defendant's account from Cliffs to Palisades as well as the amended master servicing agreement between Palisades to plaintiff. Those agreements both stated that any accounts receivable acquired by the assignor would be automatically assigned to the assignee immediately upon acquisition by the assignor (thus the term "forward-flow"). The effective date of the assignment from Cliffs to Palisades (and also from Palisades to plaintiff) is therefore the date that Cliffs acquired the account from Portfolio A: October 6, 2003.

¶ 19    The other two elements are more troublesome. Regarding the accounts transferred, the agreement between Citibank and Portfolio A refers to a list of accounts known as the "Asset Schedule," which was purportedly a spreadsheet that contained the identifying information for all accounts that are to be transferred to Portfolio A. The Asset Schedule was attached as "Exhibit 1" to the Citibank-Portfolio A agreement. But the copy of "Exhibit 1" in the record has been completely redacted. In support of its claim that

defendant's account was one of the accounts transferred, plaintiff has instead attached another free-standing exhibit to the complaint that consists of only a single line of information on three otherwise blank pages. This appears to be the identifying information for defendant's account, but there is no indication in the document that it was part of the Asset Schedule referenced in the Citibank-Portfolio A agreement. Indeed, the only basis for the claim that defendant's account was part of the assets transferred from Citibank to Portfolio A is plaintiff's allegation that it was. The problem is the same with the Portfolio A-Cliffs agreement, which also contains an asset schedule that has been completely redacted. This means that the documents attached to the complaint that purport to manifest the assignments between Citibank, Portfolio A, and Cliffs do not actually contain any information regarding the accounts transferred.

¶ 20    Had those been the only transactions in the chain of title, then there would not necessarily be a problem because the Citibank-to-Portfolio A and Portfolio A-to-Cliffs transactions are not subject to the requirements of section 8b. But recall that the forward-flow arrangements between Cliffs, Palisades, and plaintiff automatically transferred all assets as soon as they were acquired by the assignors, so the agreements did not include lists of specific accounts that were subject to the agreements. Because the assignments for collection were arranged in this way, the identifying information for accounts transferred can *only* be found by referring to the asset schedules from the Citibank-Portfolio A and Portfolio A-Cliffs agreements. Such incorporation by reference is acceptable, as we held in *Shah I*, 407 Ill. App. 3d at 743-44. Yet the incorporated asset schedules in those agreements have been redacted and therefore do not include the relevant account information. The only indication in the record that defendant's account was actually part of the accounts transferred is a single line of account information that has been stripped of all context and then cut and pasted into a separate exhibit to the complaint. Plaintiff claims that that defendant's account information came from the asset schedules, but plaintiff has not included an unredacted version of the documents in the record.

¶ 21    The same is true of the consideration requirement. The agreements between Cliffs, Palisades, and plaintiff each incorporate a "Fee Schedule," which lists the compensation that the assignee is entitled to receive. But the fee schedules and accompanying consideration information have also been redacted from all copies of the complaint in the record on appeal. The apparent reason for the redactions is that plaintiff considered the information to be proprietary, so it asked the circuit court to place unredacted copies of those documents under seal.[3] But that has proven fatal to our ability to review this case on appeal because plaintiff never filed an unredacted copy with this court. The only record available to us for review has been stripped of the asset schedules and any information regarding the consideration terms for the assignments.

¶ 22    It has long been settled that it is the appellant's burden to provide an adequate record of the proceedings in order for us to fully review the issues on appeal (*Altaf v. Hanover*

---

[3]Whether that is permissible under section 8b is at least debatable. Defendant contends that placing the consideration terms under seal violates section 8b's requirement that terms of the assignment be "open and precise" (*Webster*, 298 Ill. App. 3d at 260) but that is something that we need not consider here because of plaintiff's failure to provide us with a complete record.

*Square Condominium Ass'n No. 1*, 188 Ill. App. 3d 533, 539 (1989)), so we must resolve any doubts that may arise due to the incompleteness of the record against the appellant (*Foutch v. O'Bryant*, 99 Ill. 2d 389, 392 (1984)). Plaintiff's failure to include a complete and unredacted version of the complaint's supporting documents in the record on appeal prevents us from determining whether the complaint satisfies section 8b's mandate. The parties disagree whether the unredacted versions of the documents properly disclose the amounts paid by Palisades and plaintiff for defendant's account and whether the asset schedules actually included defendant's account, but we cannot resolve the dispute without reviewing those documents. If plaintiff was concerned about the confidentiality of proprietary information, then it could have asked to file the documents with this court under seal as our local rules allow in some circumstances (see Ill. App. Ct., First Dist., R. 17 (eff. Sept. 1, 2004)). But plaintiff did not do so, which leaves us to resolve this appeal on an incomplete record.

¶ 23  Section 8b prohibits plaintiff from stating a claim to defendant's debt without first demonstrating that the written assignments for collection in the chain of title satisfy section 8b. See 225 ILCS 425/8b(e) (West 2008). Based on the record before us, plaintiff has not done so because the information required by section 8b has been removed from the documents. While it is entirely possible that the unredacted versions satisfy section 8b, we cannot know because they have not been included in the record. Absent a sufficient record for us to review, we must presume that the trial court's rulings on these matters "had a sufficient factual basis and *** conform[ed] with the law." *In re Marriage of Gulla*, 234 Ill. 2d 414, 422 (2009). Plaintiff's failure to include unredacted copies of the documents that contain the consideration terms and account information for the assignments prevents us from reviewing plaintiff's claim that the assignments satisfy section 8b, so we must assume that the circuit court ruled correctly when it dismissed the complaint.

¶ 24  Affirmed.